# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 10, 2010 Session

## GRAY'S DISPOSAL COMPANY, INC. ET AL. v. METROPOLITAN GOVERNMENT OF NASHVILLE, DAVIDSON COUNTY ET AL.

**Appeal by Permission from the Court of Appeals, Middle Section**
**Chancery Court for Davidson County**
**Nos. 98-3317-III, 03-3890-I(III), 98-3400-II(III)**
**Ellen Hobbs Lyle, Chancellor**

---

**No. M2007-00528-SC-R11-CV - Filed August 31, 2010**

---

This appeal involves the application of a decision by the United States Supreme Court to legal issues in a matter pending before a state trial court after being remanded by a state appellate court. In 1998, a group of commercial waste haulers filed suit in the Chancery Court for Davidson County challenging the validity of a flow control ordinance enacted by the Metropolitan Government of Nashville and Davidson County. The trial court granted the Metropolitan Government's motion for summary judgment. However, in 2002, the Court of Appeals, relying on a decision of the United States Court of Appeals for the Sixth Circuit, reversed the trial court with regard to part of the application of the ordinance and remanded the case to the trial court for further proceedings. *Gray's Disposal Co. v. Metro. Gov't of Nashville, Davidson Cnty.*, 122 S.W.3d 148 (Tenn. Ct. App. 2002). While the case was pending in the trial court, the United States Supreme Court handed down a decision contrary to the Sixth Circuit's decision relied upon by the Tennessee Court of Appeals. The trial court declined to follow the United States Supreme Court's intervening decision. The Court of Appeals, relying on the law of the case doctrine and equitable principles, affirmed. *Gray's Disposal Co. v. Metro. Gov't of Nashville, Davidson Cnty.*, No. M2007-00528-COA-R3-CV, 2009 WL 454183 (Tenn. Ct. App. Feb. 23, 2009). We granted the Metropolitan Government's Tenn. R. App. P. 11 application for permission to appeal. We have determined that Tennessee's courts are not free to disregard applicable intervening changes in federal constitutional law announced by the United States Supreme Court while a case is pending on remand. Accordingly, we reverse the judgment of the Court of Appeals.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, GARY R. WADE, and SHARON G. LEE, JJ., joined.

Sue B. Cain, Director of Law, J. Brooks Fox, Christopher M. Lackey, Melissa S. Roberge, and Elizabeth A. Sanders, Assistant Metropolitan Attorneys, Nashville, Tennessee, for the appellants, Metropolitan Government of Nashville, Davidson County, Tennessee and Metropolitan Thermal Transfer Corporation.

Thurman T. McLean, Jr., Nashville, Tennessee, for the appellees, Gray's Disposal Company, Inc. and Ray Webster d/b/a Hermitage Hills Sanitary Company.

**OPINION**

**I.**

In 1963, the separate governments of the City of Nashville and Davidson County were consolidated into the Metropolitan Government of Nashville and Davidson County ("Metropolitan Government").[1] As a result of this consolidation, the portion of the county located within the boundaries of the old city became the Urban Services District and the remainder of the county became the General Services District.[2] The benefit of living in the Urban Services District is increased city services;[3] the burden, however, is the obligation to pay increased taxes.

Waste collection is an example of the increased services available to residents of the Urban Services District. While the Metropolitan Government must dispose of all the waste generated by county residents, it only collects the waste from the residents of the Urban Services District. The Metropolitan Government uses its own employees and private haulers to collect this waste. In contrast, residents of the General Services District must hire private haulers to collect their waste.

Since 1974, most of the solid waste generated by the residents of Davidson County has been hauled to the Nashville Thermal Transfer Corporation ("Nashville Thermal"), a power plant that used solid waste as fuel to provide heating and cooling to the buildings in downtown Nashville. This facility was owned by the Metropolitan Government and operated by a not-for-profit corporation. In 1981, the Tennessee General Assembly amended Tenn.

---

[1] Carole Bucy, *Short History of Metropolitan Government for Nashville-Davidson County*, Nashville Public Library, http://www.library.nashville.org/research/res_nash_history_metrohistory.asp (last visited Aug. 9, 2010) ("Bucy, *Short History*").

[2] Charter of Metro. Gov't of Nashville & Davidson County, Tenn. art. I; § 1.03 (2010) ("Metro. Charter").

[3] *See generally* Metro. Charter § 1.05.

Code Ann. § 7-54-103 to allow the Metropolitan Government to charge fees for the collection of solid waste.[4]

The Metropolitan Government began charging "tipping fees"[5] for deliveries of solid waste to Nashville Thermal. These fees were used to fund the operation of the Nashville Thermal plant. To assure that Nashville Thermal had a sufficient and steady supply of solid waste, the Metropolitan Government enacted a series of "flow control" ordinances requiring that all residential solid waste generated in Davidson County be disposed of at the Nashville Thermal plant. The Metropolitan Government did not collect the tipping fee from the Department of Public Works or from the private haulers with whom it contracted to collect solid waste in the Urban Services District.[6] Consequently, only the private haulers collecting waste in the General Services District and disposing of it at the Nashville Thermal plant were required to pay the tipping fees.

Gray's Disposal Company, Inc. ("Gray's Disposal") is a family-owned refuse hauler that began operating in 1948. Ray Webster began operating Hermitage Hills Sanitary Company ("Hermitage Hills") in 1960. Both of these haulers served private customers in the General Services District. Ostensibly as a result of the Metropolitan Government's tipping fees, Gray's Disposal filed for bankruptcy on November 30, 1995, and Mr. Webster sold his business in 1997.

In November 1998, Gray's Disposal and Mr. Webster filed suit in the Chancery Court for Davidson County seeking a declaration that the tipping fees and flow control ordinances violated the Metropolitan Charter and the Commerce Clause of the United States Constitution.[7] Specifically, Gray's Disposal and Mr. Webster alleged that the Metropolitan Government was permitting other haulers to co-mingle waste from the Urban Services District with waste from the General Services District to avoid paying the tipping fee. The

---

[4]Act of April 8, 1981, ch. 204, § 5, 1981 Tenn. Pub. Acts 264, 266-67 (codified as amended at Tenn. Code Ann. § 7-54-103(e) (2005)).

[5]The term "tipping fee" originates from the manner in which refuse trucks unload their waste – the bed of the truck rises and "tips" the refuse out. *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 336 n.1 (2007).

[6]Tipping fees were computed for deliveries by private haulers on Urban Services District routes, but these fees were either rebated or credited against the fees charged to these private haulers on their General Services District routes.

[7]U.S. Const. art. I, § 8, cl. 3.

Metropolitan Government filed a separate suit against Mr. Webster seeking unpaid tipping fees for dates prior to December 1997. These cases were consolidated by agreement.[8]

On March 12, 2001, the trial court granted a summary judgment dismissing the claims of Gray's Disposal and Mr. Webster. Nine months later, on December 12, 2001, the trial court granted the Metropolitan Government's claims for unpaid tipping fees. The order directed Gray's Disposal to remit $66,789.80 and Mr. Webster to remit $55,275.00 in unpaid fees. Gray's Disposal and Mr. Webster appealed both summary judgments to the Court of Appeals.

The Court of Appeals filed its first opinion in this case on December 31, 2002. While the court generally upheld the validity of the Metropolitan Government's tipping fees and flow control ordinances, it relied on *Waste Management of Tennessee, Inc v. Metropolitan Government of Nashville & Davidson County*, 130 F.3d 731 (6th Cir. 1997) ("*Waste Mgmt.*"), to hold that a portion of the fees sought by the Metropolitan Government had been imposed as part of an illegal flow control regulation that violated Gray's Disposal's and Mr. Webster's Commerce Clause rights. *Gray's Disposal Co. v. Metro. Gov't of Nashville, Davidson Cnty.*, 122 S.W.3d 148, 168-69 (Tenn. Ct. App. 2002) ("*Gray's Disposal I*"). Accordingly, the Court of Appeals held that Gray's Disposal and Mr. Webster "remain liable for the payment of any unpaid tipping fees accumulated by the respective appellants after November 5, 1997." *Gray's Disposal Co. v. Metro. Gov't of Nashville, Davidson Cnty.*, 122 S.W.3d at 169. Accordingly, the court "remand[ed] this cause to the trial court for determination of the respective totals owing by each respective appellant for unpaid tipping fees accumulated after November 5, 1997." *Gray's Disposal Co. v. Metro. Gov't of Nashville, Davidson Cnty.*, 122 S.W.3d at 169.

Apparently the remanded case was not enough litigation for the parties. For the next four years or so, they let that proceeding lay fallow while they pursued new claims against each other. In December 2003, Gray's Disposal and Mr. Webster filed a new suit against the Metropolitan Government seeking to recover tipping fees paid prior to November 5, 1997.[9] The Metropolitan Government responded with a new lawsuit of its own in May 2006,

---

[8]The Metropolitan Government did not pursue claims for unpaid tipping fees against Gray's Disposal because it was in bankruptcy. After Gray's Disposal emerged from bankruptcy, the Metropolitan Government amended its complaint to include claims for unpaid fees against Gray's Disposal, extending beyond December, 1997.

[9]Eventually, Gray's Disposal sought to recover $575,875.50, and Mr. Webster sought to recover $534, 835.00.

seeking to recover $63,994.90 in unpaid tipping fees from August 2001 to August 2002, prejudgment interest, and court costs from Gray's Disposal and Mr. Webster.[10]

On November 14, 2006, Gray's Disposal and Mr. Webster moved for a summary judgment in the case that had been remanded by the Court of Appeals almost four years earlier. On January 30, 2007, the trial court entered an order limiting the issues to be decided to those that had been remanded by the Court of Appeals in 2002. Later, on March 26, 2007, the trial court entered an order setting the date for the hearing on these issues for June 19, 2007.

On April 30, 2007, the United States Supreme Court handed down its decision in *United Haulers Association v. Oneida-Herkimer Solid Waste Management Authority*, 550 U.S. 330 (2007). This decision undermined the continuing legal validity of the Sixth Circuit's 1997 *Waste Management* decision. On June 1, 2007, the Metropolitan Government filed a "notice of intervening change in controlling authority" to bring the *United Haulers* decision to the trial court's attention. Thereafter, Gray's Disposal and Mr. Webster filed their notice of affirmative defenses, including defenses based on laches, the statute of limitations, and res judicata. Their chief complaint was the "lengthy delay" between the filing of the Court of Appeals' opinion on December 21, 2002, and the June 19, 2007 trial date.

During the hearing on June 19, 2007, the Metropolitan Government argued that it was no longer limited to collecting tipping fees accruing prior to November 5, 1997, because of the *United Haulers* decision. The trial court declined to consider the effect of the *United Haulers* decision on the case, stating "I'm going to stick with what the Court of Appeals told me to do on remand."

Based on the trial court's ruling, the Metropolitan Government stipulated that Mr. Webster did not owe any tipping fees and presented evidence that Gray's Disposal owed $62,036.80. Thereafter, on July 9, 2007, the trial court entered a judgment against Gray's Disposal for $62,036.80. The Metropolitan Government moved to alter or amend seeking permission to collect fees accruing prior to November 5, 1997. The trial court denied the motion based on "the untimeliness, stealth and informality with which Metro raised the issue resulting in unfair prejudice to the [plaintiffs]."

The Metropolitan Government appealed, and the Court of Appeals filed its second opinion in this case on February 23, 2009. *Gray's Disposal Co. v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2007-00528-COA-R3-CV, 2009 WL 454183 (Tenn. Ct. App. Feb. 23, 2009) ("*Gray's Disposal II*"). The court held that Gray's Disposal and Mr. Webster were

_____

[10]The trial court dismissed this complaint, and the Court of Appeals affirmed the trial court. *Metro. Gov't of Nashville & Davidson Cnty. v. Gray's Disposal Co.*, No. M2007-00073-COA-R3-CV, 2008 WL 624851 (Tenn. Ct. App. Mar. 6, 2008), *perm app. denied* (Tenn. Oct. 27, 2008).

barred from pursuing their second claim for a refund. *Gray's Disposal II*, 2009 WL 454183, at *7. While acknowledging that the *United Haulers* opinion produced an intervening change in the law, the court declined to depart from its understanding of the law of the case doctrine because it viewed this case as "one of those 'unique cases where on grounds of fairness, procedure trumps substance.'" *Gray's Disposal II*, 2009 WL 454183, at *4.

We granted the Metropolitan Government's Tenn. R. App. P. 11 application for permission to appeal. The Metropolitan Government has raised the following three issues: (1) whether *United Haulers* would allow Metro to collect unpaid tipping fees for the time period before November 5, 1997; (2) whether Metro's failure to file a motion to amend the Chancery Court's Pre-Trial Order acts as a procedural bar to the application of *United Haulers* to the facts of this case; and (3) whether Tennessee courts are bound by decisions of the United States Supreme Court after a case has been remanded to the trial court from an appellate court with instructions predicated on a contrary understanding of federal law.

## II.
### THE APPLICATION OF THE LAW OF THE CASE DOCTRINE

The Metropolitan Government argues on this appeal that the law of the case doctrine should not have prevented either the trial court or the Court of Appeals from giving effect to the *United Haulers* decision in this case. It insists that the *United Haulers* decision amounts to a change in the controlling law that occurred after the Court of Appeals remanded the case for further proceedings. We agree.

### A.

An appellate court's final decision in a case establishes the "law of the case" when a case is remanded for further proceedings. This "law of the case" is binding on the trial court during the remanded proceedings and is also binding on the appellate courts should a second appeal be taken after the trial court enters a judgment in response to the remand order. *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998). While the doctrine applies only to issues that were actually decided by the court, explicitly or implicitly, it does not apply to dicta. *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d at 306; *Ladd ex rel. Ladd v. Honda Motor Co.*, 939 S.W.2d 83, 90 (Tenn. Ct. App. 1996).

The "law of the case" doctrine is neither a constitutional mandate nor an inflexible limit on the adjudicatory power of the courts. Instead, it is "a longstanding discretionary rule of judicial practice," *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d at 306; *Orlando Residence, Ltd. v. Nashville Lodging Co.*, 213 S.W.3d 855, 861 (Tenn. Ct. App. 2006), reflecting the commonsense recognition that issues previously litigated and decided by a court of competent jurisdiction need not be revisited. *In re Estate*

*of Boote*, 265 S.W.3d 402, 413 (Tenn. Ct. App. 2007); *Ladd ex rel. Ladd v. Honda Motor Co.*, 939 S.W.2d at 90. Adhering to the "law of the case" doctrine promotes finality and efficiency in litigation, ensures consistent results in the same proceeding, and assures that lower courts follow the decision of higher courts. *State v. Jefferson*, 31 S.W.3d 558, 561 (Tenn. 2000); *Harrison v. Laursen*, 128 S.W.3d 204, 208 (Tenn. Ct. App. 2003).

As salutary as the "law of the case" doctrine may be, it does not erect an absolute bar to the renewed consideration of earlier-decided issues. The doctrine does not necessarily apply: (1) when the evidence offered at a trial or hearing following the remand is substantially different from the evidence in the earlier proceeding; (2) when the prior decision was clearly erroneous and would result in manifest injustice if allowed to stand; or (3) when the prior decision is contrary to a change in the controlling law which has occurred between the first and second appeal. *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d at 306; *In re Estate of Boote*, 265 S.W.3d at 413.

**B.**

In response to the accelerating generation of solid waste in the United States,[11] many local governments stepped up their recycling efforts and either upgraded solid waste disposal facilities or constructed new, more efficient ones. These efforts are capital-intensive and thus present funding challenges. While raising taxes is one way to provide this funding, local governments have frequently used tipping fees and flow control measures to produce the needed revenue.[12]

The viability of these programs depends on their adoption and use by the residents in the area being served. To assure economic viability, flow control measures assure a steady source of revenue by requiring waste haulers to deliver their waste to designated facilities.[13] In circumstances where a local government has contracted for waste disposal services with a private, for-profit corporation, the contractors have considered a flow control ordinance as an essential part of their agreement.

---

[11]In 2008, Americans generated 250,000,000 tons of solid waste each day which is an average of 4.5 pounds of waste per person per day. Office of Resource Conservation and Recovery, U.S. Environmental Protection Agency, *Municipal Solid Waste Generation, Recycling, and Disposal in the United States: Facts and Figures for 2008* (2009), *available at* http://www.epa.gov/osw/nonhaz/municipal/pubs/msw2008rpt.pdf.

[12]*See generally* Maryellen Suhrhoff, Note, *Solid Waste Flow Control and the Commerce Clause: Circumventing* Carbone, 7 Alb. L.J. Sci. & Tech. 186 (1996) (discussing municipalities' approaches to financing solid waste management in response to increased expenses and constitutional limitations).

[13]*United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. at 334, 343, 346.

Despite the popularity of flow control measures among local governments, they often came under legal attack by the private waste disposal companies who lost business when a local government adopted a flow control ordinance. Companies that were not designated as an approved recipient of solid waste could no longer accept waste from areas covered by the flow control ordinance. Accordingly, their customers were required to contract with others to dispose of their solid waste.

In 1994, the United States Supreme Court invalidated a flow control ordinance that required residents of a local government to dispose of their solid waste with a private for-profit company that had contracted with the local government to construct and operate a new solid waste transfer station for non-recyclables. *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383 (1994). The Court held that the town's flow control ordinance, which favored one local business over other competing businesses, violated the Commere Clause and could be upheld only if the town could demonstrate, under rigorous scrutiny, that it had no other means to advance a legitimate local interest. *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. at 392. Because the town conceded that the flow control ordinance was chiefly a financing measure, the Court concluded that the town had not carried its burden and held that "[s]tate and local governments may not use their regulatory power to favor local enterprise by prohibiting patronage of out-of-state competitors or their facilities." *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. at 394.

In the wake of the *C & A Carbone* decision, Waste Management, Inc., a private waste collector that operated a waste disposal facility in Nashville, challenged the Metropolitan Government's tipping fees and flow control ordinance in the United States District Court for the Middle District of Tennessee on the grounds that it violated the Commerce Clause and the Due Process Clause. The District Court enjoined the enforcement of the tipping fee provisions but did not enjoin the flow control ordinance. On appeal, the United States Court of Appeals concluded that the Metropolitan Government's ordinances were similar to those struck down by the United States Supreme Court in *C & A Carbone, Inc. v. Town of Clarkstown* and enjoined both the tipping fee and the flow control ordinance. *Waste Mgmt., Inc. v. Metro. Gov't of Nashville and Davidson Cnty.*, 130 F.3d at 736-37.

When the case currently before us was first appealed to the Court of Appeals, the Court relied heavily on the Sixth Circuit's *Waste Management* decision in its opinion. It held that the fees accrued prior to November 5, 1997 – the date of the *Waste Management* decision – were "an unconstitutional violation of appellants' rights under the [C]ommerce [C]lause. Appellants can not be held liable for the payment of fees, where such fees were imposed involuntarily upon appellants as a mandatory requirement of an illegal municipal regulation." *Gray's Disposal I*, 122 S.W.3d at 169.

After the Court of Appeals vacated the summary judgment for the Metropolitan Government and remanded the case to the trial court but before the long-delayed hearing in

the trial court, the United States Supreme Court limited the application of its *C & A Carbone* decision to circumstances where the flow control ordinance benefitted a private contractor. Noting that waste disposal is typically and traditionally a local government function, the Court held that "it does not make sense to regard laws favoring local government and laws favoring private industry with equal skepticism." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. at 343. Accordingly, the Court held that "flow control ordinances, which treat in-state private business interests exactly the same as out-of-state ones, do not 'discriminate against interstate commerce' for purposes of the dormant Commerce Clause." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. at 345.

Although the United States Supreme Court was addressing the constitutionality of a flow control ordinance from another state when it decided the *United Haulers* case, the determinative legal issue decided by the Court was identical to the issue addressed and decided by the United States Court of Appeals for the Sixth Circuit in its *Waste Management* opinion. The Tennessee Court of Appeals relied heavily on the reasoning of the *Waste Management* opinion when it decided *Gray's Disposal I*. The United States Supreme Court's application of the Commerce Clause in *United Haulers*, therefore, controls the resolution of the issues still pending in *Gray's Disposal II*.

**C.**

There can be little question that the United States Court of Appeals for the Sixth Circuit would have reached a different conclusion had it analyzed the Metropolitan Government's tipping fees and flow control ordinance in 1997 using the principles announced by the United States Supreme Court in *United Haulers* rather than those employed by the Court in *C & A Carbone, Inc.* Nashville Thermal was clearly a public entity. Thus, rather than employing the strict scrutiny required when government favors a private entity over its competitors, the Sixth Circuit would have used the more lenient balancing test found in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), to assay the validity of the Metropolitan Government's ordinance. *See United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. at 346.

The benefits of operating Nashville Thermal through the enactment and enforcement of tipping fees and the flow control ordinance clearly outweigh an incidental effect on interstate commerce. The program enabled the Metropolitan Government to provide needed solid waste disposal services to its residents and to distribute the costs of these services reasonably without duplication or overcharging. Efficient administration of public funds and services is unquestionably a legitimate local public interest. *Cf. Pike v. Bruce Church, Inc.*, 397 U.S. at 142.

Accordingly, we agree with the Metropolitan Government that the United States Supreme Court's *United Haulers* decision is an intervening change in controlling law for the purposes of the application of the "law of the case" doctrine. It effectively overruled the constitutional basis of both the Sixth Circuit's *Waste Management* decision and the Court of Appeals decision in *Gray's Disposal I*. Accordingly, the *United Hauler's* decision provided a prima facie basis for declining to apply the "law of the case" doctrine in this case.

## III.
### EQUITABLE REASONS FOR NOT RECOGNIZING AND APPLYING AN INTERVENING CHANGE IN CONTROLLING LAW IN A PENDING AND UNRESOLVED CASE

Both the trial court and the Court of Appeals side-stepped deciding whether the United States Supreme Court's *United Haulers* decision amounted to an intervening change in substantive law that precluded the application of the "law of the case" doctrine. They did so by pointing to "equitable reasons" for not permitting the Metropolitan Government to take advantage of the *United Haulers* decision. We have concluded that both courts' justifications for ignoring the *United Haulers* decision are insufficient.

### A.

The trial court filed a detailed written memorandum explaining its reasons for declining to consider the *United Haulers* case. The court stated:

> What is in issue here is fairness to the garbage haulers and the ability of this Court to effectively and meaningfully decide cases. Metro did not use a formal, procedural mechanism, such as a motion to alter or amend the March 26, 2007 order specifying the issues for trial when Metro learned of the April 30, 2007 United States Supreme Court case. Such a formal procedural mechanism would have provided notice to opposing counsel and the Court of the asserted change in the law and an opportunity for both to study the case and determine its application to this matter, including whether additional discovery was needed and/or a continuance of the trial. The slight of hand/bootstrap procedure Metro employed of filing a Notice of Intervening Authority 18 days before the trial and mention of the United States Supreme Court case in its trial brief are unfair to opposing counsel and the Court. Metro should not reap the benefits of such conduct. The unfairness is particularly pronounced where the original owners of the hauling business are deceased and memories have dimmed with respect to events in excess of 10 years ago which Metro, on the eve of trial,

-10-

sought to tack on to the trial in this case. There are unique cases where on grounds of fairness, procedure trumps substance. This is such a case, the Court concludes.

The Court of Appeals ultimately reached the same conclusion as the trial court, but it did not agree completely with all of the trial court's reasoning. It found that the trial court had overreached by concluding that "Metro acted in bad faith or underhandedly when it filed the notice of what it believed was a change in controlling authority." *Gray's Disposal II*, 2009 WL 454183, at *5. To the contrary, the Court of Appeals observed that "Metro notified the court and the parties of the case within a reasonable time, approximately one month after the Supreme Court issued its opinion." *Gray's Disposal II*, 2009 WL 454183, at *5. Nevertheless, the Court of Appeals noted that Metro's filing of the Notice eighteen days before trial did result in "some prejudice." *Gray's Disposal II*, 2009 WL 454183, at *5.

In reaching its conclusion that this case was one "where on grounds of fairness, procedure trumps substance," the Court of Appeals explained:

> We cannot ignore the fact that more than four years passed before a hearing was held to address the issue remanded by this Court. A final judgment will not be altered or amended unless the complaining party presents "clear, convincing, cogent evidence" that it has suffered an injustice and that it is in no way responsible for causing the alleged injustice. Had Metro pursued the relief afforded it by this Court in a timely fashion, the action would have been closed long before *United Haulers* was decided. We find unpersuasive Metro's argument that the lengthy delay was caused by Appellants' filing of case number 03-3890-I(III). Metro offers no other explanation for its delay in effectuating a hearing on remand. Accordingly, we find that the trial court did not err when it declined to modify our instructions on remand in *Gray's Disposal I*.

*Gray's Disposal II*, 2009 WL 454183, at *4 (citation and footnote omitted). In other words, the Court of Appeals essentially concluded that litigation in this case, which was remanded on December 31, 2002, should have long since been completed prior to the issuance of the *United Haulers* decision and that Metro had not offered an adequate justification for the delay in this case.

**B.**

The Metropolitan Government insists that federal precedent required the trial court and the Court of Appeals to follow the *United Haulers* decision without considering the

-11-

"equities" of the circumstances. It points out that the United States Supreme Court had clearly held that when it

> applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

*Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 97 (1993). Gray's Disposal and Mr. Webster insist that this principle is limited to criminal decisions. They are mistaken.

The United States Supreme Court has pointed out that "[w]hatever freedom state courts may enjoy to limit the retroactive operation of their own interpretations of state law cannot extend to their interpretations of federal law." *Harper v. Virginia. Dep't of Taxation*, 509 U.S. at 100 (citation omitted). In addition, the Court has held that

> when (1) the Court decides a case and applies the (new) legal rule of that case to the parties before it, then (2) it and other courts must treat that same (new) legal rule as 'retroactive,' applying it, for example, to all pending cases, whether or not those cases involve predecision events.

*Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752 (1995). As noted by the United States Court of Appeals for the Eleventh Circuit, the main principle of the *Harper v. Virginia Department of Taxation* decision is that once the United States Supreme Court "applies a newly announced rule [of federal law] to the parties before it, all other courts must apply that rule to all pending cases." *Glazner v. Glazner*, 347 F.3d 1212, 1217-18 (11th Cir. 2003).

Gray's Disposal's and Mr. Webster's argument that *Harper's* main principle applies only to criminal cases ignores that *Harper* itself involved a dispute over tax refunds and that *Reynoldsville Casket Co.* involved the application of a tolling statute to a personal injury claim. It also ignores the overwhelming authority suggesting that the decision in *Harper* was intended to require retroactive application of United States Supreme Court's rulings to other pending civil cases in circumstances where the Court applied its decision to the parties before it. *See also, e.g.,* 2 Sheldon Nahmod, *Civil Rights & Civil Liberties Litigation: The Law of Section 1983* § 6:62 n.1 (2009) (observing that *Harper v. Virginia Dep't of Taxation* is addressed to establishing the retroactivity guidelines for the application of decisions in civil cases); Douglas W. Kmiec, *Natural Law Originalism for the Twenty-First Century - A Principle of Judicial Restraint, Not Invention*, 40 Suffolk U. L. Rev. 383, 415 (2007) (noting that *Harper v. Virginia Dep't of Taxation* extended to civil cases a standard of retroactivity previously applicable in criminal cases).

## C.

Prior to its decision in *Harper*, the United States Supreme Court determined the retroactive application of a new rule on a case-by-case basis in a manner that included "weigh[ing] the inequity imposed by retroactive application." *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-07 (1971). However, the Court expressly rejected this approach in *Harper*. *Harper v. Virginia Dep't of Taxation*, 509 U.S. at 95 n.9, 97. The Court also expressly "prohibit[ed] the erection of selective temporal barriers to the application of federal law in noncriminal cases." *Harper v. Virginia Dep't of Taxation*, 509 U.S. at 97. As opposed to *Chevron Oil Co. v. Huson*'s approach, *Harper v. Virginia Department of Taxation* represented a determination that varying and conflicting application of the United States Supreme Court's decisions to pending cases was arbitrary and lacking in fairness. *See Dempsey v. Allstate Ins. Co.*, 104 P.3d 483, 487 (Mont. 2004). Where the legal question at issue is a federal one, "the United States Supreme Court has quite plainly decreed that the federal doctrine of retroactivity cannot be circumscribed by the state courts." *Annenberg v. Commonwealth*, 757 A.2d 338, 351 (Pa. 2000).

Based on this record, we are not prepared to attribute the delay in resolving this case solely to the actions of the Metropolitan Government. More importantly, we have concluded that the lower courts' concern about the lengthy delay in resolving this case after it was remanded and the perceived unfairness of employing the substantive law in *United Haulers* to finally resolve this dispute is plainly inconsistent with the main principle of the *Harper v. Virginia Department of Taxation* decision. Accordingly, we find that the trial court and the Court of Appeals erred by failing to apply the *United Haulers* decision to bring an end to this dispute.

## IV.
### THE METROPOLITAN GOVERNMENT'S FAILURE TO FILE A MOTION TO ALTER OR AMEND THE PRETRIAL ORDER

As a final matter, Gray's Disposal and Mr. Webster contend that the courts need not consider the Metropolitan Government's arguments based on *United Haulers* because the Metropolitan Government brought it to the trial court's attention in a "notice of filing intervening change in controlling authority" rather than in a Tenn. R. Civ. P. 59.04 motion to alter or amend. This argument exalts form over substance.

The trial court viewed the Metropolitan Government's filing as some sort of subterfuge to circumvent its Tenn. R. Civ. P. 16.05 pre-trial order. We concur with the Court of Appeals that there is simply no basis upon this record for characterizing the Metropolitan Government's filing of a notice of intervening authority as opposed to a motion to alter or amend the trial court's order in such a manner.

In addition, it is not readily apparent that the substance of the Metropolitan Government's notice of intervening authority is, in fact, beyond the scope of the pre-trial order. The trial court's March 26, 2007 order states that "[t]he Court shall conduct a trial . . . on the only issue remaining in this case: the amounts owed to Metro in Cause No. 98-3400-II(III)." The Metropolitan Government's notice of intervening authority is directly addressed to the amounts owed to the city in that proceeding. Thus, while the Metropolitan Government could have potentially sought to clarify the trial court's Rule 16.05 pre-trial order, it is not apparent that any actual amendment or altering thereof was required to keep the Metropolitan Government's notice of intervening authority within the scope of the trial court's order.

## V.

In summary, we conclude that the United States Supreme Court's decision in *United Haulers Association, Inc. v. Oneida-Herkimer Solid Waste Management Authority* constitutes an intervening change in the controlling authority in this case and that the lower courts' reliance on equitable principles to avoid applying the *United Haulers* decision to this case was impermissible under *Harper v. Virginia Department of Taxation*. Applying the *United Haulers* decision, we find that the trial court and the Court of Appeals erred by failing to require Gray's Disposal to enter an order, consistent with the trial court's December 12, 2001 order, granting the Metropolitan Government a $66,789.90 judgment against Gray's Disposal and a $55,275.00 judgment against Mr. Webster for unpaid tipping fees.[14] Accordingly, we remand the case to the trial court with directions to enter a final order consistent with its December 12, 2001 order. We also tax the costs of this appeal, jointly and severally, to Gray's Disposal Company, Inc. and Ray Webster.

_____
WILLIAM C. KOCH, JR., JUSTICE

---

[14]The Metropolitan Government has not requested interest in this case. Accordingly, the amount of the judgments in the trial court's December 12, 2001 order have remained unchanged, despite the lengthy nature of the litigation between these parties.