IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 5, 2024 Session

## RUTH MITCHELL v. CITY OF FRANKLIN, TENNESSEE

**Appeal from the Circuit Court for Williamson County**
**No. 19CV-152      Joseph A. Woodruff, Judge**

### No. M2023-00736-COA-R3-CV

This is the second appeal in this personal injury matter involving the plaintiff's injury from an uneven sidewalk owned by the defendant city. In the first appeal, this Court remanded for the trial court to consider expert testimony that had been erroneously excluded by the trial court. On remand, the trial court heard expert testimony on the issue of the city's maintenance and inspection of its sidewalks. Because the evidence on remand did not include any new evidence regarding the length of time that the sidewalk defect had existed, we have concluded that the issues raised by the plaintiff in this appeal are pretermitted by the law of the case doctrine.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which ARNOLD B. GOLDIN and JEFFREY USMAN, JJ., joined.

James Bryan Moseley, Murfreesboro, Tennessee, for the appellant, Ruth Mitchell.

B. Duane Willis, Jr., Nashville, Tennessee, for the appellee, City of Franklin, Tennessee.

### OPINION

#### FACTUAL AND PROCEDURAL BACKGROUND

This is a personal injury suit filed by Ruth Mitchell against the City of Franklin in March 2019 for injuries sustained when, on June 3, 2018, she tripped and fell on an uneven sidewalk owned and controlled by the City. The complaint alleged that her fall was the result of "an abrupt change in elevation caused by a raised portion of the sidewalk." Ms. Mitchell asserted that the City breached the following duties owed to her: "a duty to maintain its property in a safe condition; to inspect its property to discover unsafe conditions; to take corrective measures to remove or repair unsafe conditions which could

be remedied; and to warn of conditions which could not, as a practical matter, be removed or repaired." The City denied fault and raised the defense of comparative fault as well as defenses under the Governmental Tort Liability Act.

After the parties completed discovery, in November 2020, the City filed a motion for summary judgment, and Ms. Mitchell filed a motion for partial summary judgment. In a memorandum and order entered on February 3, 2021, the trial court ruled on both motions. On the City's motion, the court ruled that the City was entitled to summary judgment only as to the applicability of the exceptions to the removal of the City's immunity at Tenn. Code Ann. § 29-20-205(1) (regarding the exercise of a discretionary function) and § 29-20-205(4) (regarding failure to inspect or negligent inspection).[1] Thus, Ms. Mitchell could not proceed on a theory of removal of immunity under those provisions. The trial court denied the City's motion for summary judgment with respect the removal of the City's immunity under Tenn. Code Ann. § 29-20-203 (regarding negligence based on a defective, unsafe, or dangerous condition of which the City had actual or constructive notice).[2] The court denied Ms. Mitchell's motion for partial summary judgment on the issue of liability.

*Motion in limine*

Prior to trial, the City filed a motion in limine to exclude the testimony of David Johnson, Ms. Mitchell's proposed expert witness. In ruling on the motion, the trial court found that Mr. Johnson was qualified to offer expert testimony on sidewalk safety. The court went on, however, to grant the City's motion to exclude certain portions of Mr. Johnson's testimony: (1) testimony in reliance upon a certain photograph "depicting an allegedly similar elevated sidewalk" and (2) testimony "regarding the City's sidewalk maintenance standards."

---

[1] Tennessee Code Annotated section 29-20-205 provides, in pertinent part:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
> (1) The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;
> . . .
>
> (4) A failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property;

[2] Under Tenn. Code Ann. § 29-20-203(a), "[i]mmunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity." Subsection (b) requires actual or constructive notice of the condition to the governmental entity. Tenn. Code Ann. § 29-20-203(b).

The case was heard in a bench trial over two days in June 2021. Ms. Mitchell presented testimony from a number of witnesses: Barry Johnson, facility manager for the church adjoining the sidewalk where Ms. Mitchell fell; a church member who assisted Ms. Mitchell after the fall; two of Ms. Mitchell's friends; Ms. Mitchell's daughter; Ms. Mitchell; Margaret Martin, a city alderman and church member; David Johnson, an expert witness; Doug Pratt, a City road inspector; Steve Grubb, director of the City's street department; and Tim Napier, a risk management specialist for the City. For purposes of this appeal, we will examine the testimony of Barry Johnson, the church's facility manager, and of the plaintiff's expert, David Johnson.

Barry Johnson, the plaintiff's first witness, began working at the church in 2012. He testified that, in late 2012, he "noticed that the sidewalks around were in pretty bad shape." In particular, he observed that there were cracked and uneven places in the sidewalks around the church and was concerned about the possibility of someone falling and injuring themselves. Mr. Johnson testified that he initially spoke with Jim Maxwell, a church member who worked for the City, and Mr. Maxwell referred him to Brad Wilson, a church member and City employee. According to Mr. Johnson, Mr. Wilson advised him to "go to the permit office and tell the lady that was there, and she will make a note of it and let somebody know." A few days later, Mr. Johnson testified, he went to the permit office and spoke to a woman who appeared to be in charge.[3] Mr. Johnson further testified: "I just explained to her who I was, what I did, and what we thought could be a problem. And she said she would let somebody know." In particular, he notified the City employee that "the sidewalks were messed up from Church Street down to Cummins."

Mr. Johnson also testified that the tree near the scene of Ms. Mitchell's fall had been removed in "probably 2015, 2016." He stated that, after the removal of the tree, he could not tell by looking that the condition of the sidewalk changed. Mr. Johnson estimated that the sidewalk elevation at the accident site after the removal of the tree was "an inch or two," but he "never did actually measure it."

Ms. Mitchell submitted David Johnson as a safety expert, and the court found him qualified as an expert in the field of human factors engineering. Mr. Johnson testified that, under the applicable standards for safe walking surfaces,[4] "[y]ou can have a vertical change

---

[3] Mr. Johnson later testified that, according to his log book, he went to city hall on November 29, 2012. The court asked: "Are you now telling me that you only went [to city hall] that one time, November 29, 2012?" Mr. Johnson answered, "Yes." The court then asked: "So you saw Mr. Maxwell, Mr. Wilson, and the unknown lady who runs the permit office all on the same day, November 29, 2012?" Mr. Johnson answered, "Yes."

[4] The City of Franklin had adopted the standards of the American National Standards Institute.

in elevation up to a quarter of an inch that can be untreated." A change in elevation exceeding a quarter of an inch and less than an inch must be ground down or beveled to a more gradual slope. If the change is greater than one inch, the sidewalk slab must be replaced. Mr. Johnson had gone to the site of Ms. Mitchell's fall and taken measurements.[5] Mr. Johnson estimated the change in elevation prior to the fall to have been slightly over an inch.

When plaintiff's counsel began asking Mr. Johnson whether the City's sidewalk inspection practices[6] were consistent with federal standards, defense counsel objected and the trial court sustained the objection. The court stated that plaintiff's counsel could make an offer of proof outside the presence of the court.

According to Mr. Johnson, the degree of vertical elevation of the portion of the sidewalk at issue presented a trip hazard. There followed a colloquy between the court and Mr. Johnson as to how long the sidewalk had been in that condition (with a height differential between a quarter of an inch and an inch). Mr. Johnson was not able to give an exact point when the hazard began. Looking at Google Street View images from 2010 to 2018, the expert opined that the expansion joint (where the elevation was greatest) looked the same as when Ms. Mitchell fell. Mr. Johnson stated that he could look at the photographs and see that the elevation was more than a quarter of an inch because, otherwise, the hazard probably would not be visible on the photos. He noted that, in the photographs, there was "significantly more shadowing effect [at the accident site as compared to the other pictured expansion joints] due to the vertical change in elevation between the two concrete slabs." Mr. Johnson also cited the testimony of Barry Johnson, whose observations began in 2012.

The trial court questioned Mr. Johnson about the probable cause of the sidewalk elevation. The court asked Mr. Johnson whether a storm water drain shown in the photographs could have contributed to the width of the expansion joint at the accident site, and Mr. Johnson stated, "I wouldn't think so." In addition, the court pointed to "a place where some concrete has been dislodged from some sort of impact." Mr. Johnson testified that tree roots underneath the sidewalk had probably pushed the sidewalk up at the accident site.

Plaintiff's counsel asked Mr. Johnson whether the City would have known about the trip hazard created by the sidewalk elevation if the City performed periodic inspections.

---

[5] The sidewalk elevation had been remediated by the City soon after Ms. Mitchell's accident, and the City did not have a record of any measurements its employees took before remediating the sidewalk elevation. Mr. Johnson measured the change in elevation by extending the plane of the sidewalk panel over to the expansion joint and measuring that vertical change in elevation.

[6] It is undisputed that the City's practice was to do spot inspections based upon citizen complaints but no routine periodic inspections.

After defense counsel objected[7] in light of the court's ruling on the motion in limine, plaintiff's counsel reworded the question to be "whether or not the change in elevation was known to be unsafe by the City of Franklin, not whether they knew of this condition." Mr. Johnson responded that it was the City's practice to grind down elevations exceeding a quarter of an inch. Plaintiff's counsel then pursued a different line of questioning.

The only defense witness in this case was John (Brad) Wilson, the City's facilities manager. Mr. Wilson denied speaking with Mr. Johnson regarding the condition of the sidewalks until after Ms. Mitchell's fall.

*Trial court decision*

In a memorandum and order entered on July 13, 2021, the trial court considered the testimony of Barry Johnson that he had reported the poor condition of the sidewalks on both sides of the church to the City in 2012. The trial court found Mr. Wilson more credible than Mr. Johnson and concluded that Mr. Johnson did not report the sidewalk conditions to the City in 2012. The court further relied upon the absence of any City record of a complaint concerning the sidewalks around the church until Ms. Mitchell's fall. Even if Mr. Johnson did advise the City that the sidewalks around the church were "in pretty bad shape," the court found such information "insufficient to put the City on actual notice of an elevation distance of between ¼ inch and one inch at the expansion joint" at the specific spot where Ms. Mitchell fell.

On the issue of constructive notice, the trial court found that "the record does not support a finding by a preponderance of the evidence that the vertical offset has existed for such a length of time that constructive notice should be presumed." As to the Google photos entered into evidence, the court concluded: "While the expansion joint between the two slabs is clearly visible in the photographs it is impossible to tell from the photographs

---

[7] Defense counsel's objection arose as follows:

> Q. [Plaintiff's counsel]: And was this something that would have been known to the City of Franklin?
> A. [Mr. Johnson]: It would have been known if they performed periodic inspections.
> THE COURT: Hang on a second. Mr. Willis [defense counsel], are you listening to this?
> MR. WILLIS: Yes, Your Honor. I apologize.
> THE COURT: Are you listening to his testimony?
> MR. WILLIS: Yes, Your Honor.
> THE COURT: Okay. The question was whether this condition was known to the City of Franklin. Do you have an objection to that question?
> MR. WILLIS: Thank you, Your Honor. Yes, I do. I think that's hearsay.
> THE COURT: No, it's not hearsay.
> MR. WILLIS: It also goes to whether or not there is actually—we're getting back to policy. We're getting back to maintenance and inspection. And that was already ruled on by Your Honor.

whether one of the slabs is higher than the other, and if so, by how much." The court found Mr. Johnson's measurement of the vertical displacement of the sidewalk to be unreliable[8] and therefore rejected "his opinions based on that measurement" as unreliable and not of substantial assistance to the court in determining the facts.

The trial court also rejected Ms. Mitchell's argument that, "because the two sidewalk slabs were displaced by the growth of a root from a tree planted by the City, the City created or caused the dangerous condition and should be deemed to have constructive knowledge of the resulting gap." The court dismissed the Google Street View photograph showing a tree growing a few feet from the expansion joint because "[n]o witness was able to authenticate the reliability of the date on the photograph" and because the tree was removed before Ms. Mitchell's injury. The trial court found that "there is no evidence in this record confirming that the vertical displacement of the slab in question was caused by a tree root." The court noted that there was also evidence of a storm water drain under the expansion joint at issue and that part of the sidewalk "was chipped away as a result of some sort of impact."

The court ruled that Ms. Mitchell had failed to prove that the City had actual or constructive notice of the defect in the sidewalk and that, therefore, the City's immunity was not removed. Thus, the court entered judgment in favor of the City. Ms. Mitchell appealed.

*Offer of proof*

Three days after filing her notice of appeal, Ms. Mitchell submitted to the trial court an offer of proof, which consisted of an affidavit of the expert witness, David Johnson. In his affidavit, Mr. Johnson reiterated his opinion that the sidewalk where Ms. Mitchell fell "was in an unsafe and unreasonably dangerous condition at the time of her fall." He further testified, in pertinent part, as follows:

19. Periodic inspection is the only way to prevent unreasonably dangerous conditions which pose a trip hazard to pedestrians using the sidewalk.
. . .

---

[8] The extent of the displacement is not disputed in this case. However, the court questioned the reliability of Mr. Johnson's measurement because the photograph of the measurement "shows the free end of the ruler resting on top of one of Ms. Mitchell's shoes, thus causing the ruler to flex upward and increasing the distance between the bottom of the ruler and the top of the adjacent slab." Mr. Johnson explained to the court that Ms. Mitchell's shoe was placed under the ruler to show how the toe of the shoe would have caught on the sidewalk and that any slight effect from the presence of the shoe would not change his undisputed conclusion that the displacement was greater than one-fourth of an inch and less than approximately one inch.

22. Incorporating a periodic inspection program that inspects all sidewalks at least yearly and busier sidewalks on a more frequent basis is crucial to sidewalk maintenance and safety.

23. The City of Franklin appears to do at least some inspection of its sidewalks except when the sidewalk adjoins a state route, as the sidewalk in this case does.

24. The entire sidewalk along the state route that is within the City of Franklin is only approximately two miles – See Appendix A to my report.

25. An inspection of the entire sidewalk could be performed in probably less than an hour and could be performed by in-house staff with basic training on walkway safety.

26. The City of Franklin's "complaint-driven' policy is unreasonable and problematic.

27. Primarily, the "complaint-driven" policy places the obligation to inspect sidewalks onto individuals who are neither aware of the program nor are trained or knowledgeable about what constitutes an unsafe or unreasonably dangerous sidewalk.

28. It also appears that the City of Franklin does not maintain records of sidewalk complaints, inspections, or maintenance, which makes it difficult to evaluate whether sidewalk maintenance and inspections are being performed.

29. According to the American Public Works Association, most municipalities proactively inspect their entire sidewalk system or portions of the sidewalk system, called a "zone inspection," on a yearly basis.

30. The City of Franklin's "complaint-driven" policy allows dangerous conditions to develop and continue to exist for years before the problems are corrected. This places the public at risk because the triggering of a complaint is often after someone actually is injured from the unsafe condition.

31. The Federal Highway Administration also recommends using zone inspection as part of a municipality's sidewalk maintenance program. . . .

32. There is no reason for the City of Franklin to fail to perform some type of periodic inspection of the sidewalk involved in this incident.

33. The condition which resulted in Ms. Mitchell's fall and injury existed in a dangerous condition for at least five to six years prior to this incident. Had the City of Franklin performed any periodic inspection of the sidewalk during that time, it would have discovered the condition and been able to repair it prior to Ms. Mitchell being injured.

The City filed a motion to quash the offer of proof, and the trial court denied the motion. The offer of proof was included in the record on appeal.

*Decision in first appeal*

In *Mitchell v. City of Franklin*, No. M2021-00877-COA-R3-CV, 2022 WL 4841912 (Tenn. Ct. App. Oct. 4, 2022) ("*Mitchell I*"), this Court affirmed in part and vacated in part the trial court's decision.[9]  Ms. Mitchell did not challenge the trial court's ruling on the issue of actual notice, so the appeal concerned only the question of constructive notice. *Mitchell I*, 2022 WL 4841912, at *5.  This Court identified three ways or theories to establish constructive notice and determined that two were potentially applicable in the present case:  the passage of time theory and the common occurrence theory.  *Id.* at *6-7. Under the passage of time theory, the question was whether the trial court erred in "concluding that there was no support in the record for a finding that the vertical offset of the sidewalk had existed for such a sufficient length of time that constructive notice should be presumed." *Id.* at *7.  This Court disagreed with the trial court's conclusion that that it was "impossible" to tell from the Google photographs whether one of the sidewalk slabs was higher than the other but concluded that "it is still difficult to determine how much of a change in elevation was present at that point in time [when the photographs were taken] or if that change in elevation even exceeded a quarter-inch." *Id.* at *8.

This Court discussed the testimony of Barry Johnson, facilities manager for the church, who estimated from the photographs taken in October 2011 and November 2017 that the change in elevation was "about in inch or two." *Id.* at *9.  Mr. Johnson admitted that he never measured the elevation.  *Id.* The trial court found the measurements of the expert, David Johnson, unreliable and provided an explanation for that assessment.  *Id.* This Court agreed that, "under the passage of time theory, it was unclear from the evidence at what point in time the change in elevation became greater than a quarter-inch and how long it had existed prior to Ms. Mitchell's fall."

In *Mitchell I*, this Court also analyzed the evidence applicable to a separate argument under the passage of time theory:  that the condition of the sidewalk was caused by tree roots, that the condition became static when the tree was removed (prior to the fall), and that "therefore the condition was present for a period of time without being inspected or repaired by the City." *Id.* at *10.  The appellate court concluded that, "[d]espite the testimony regarding the tree and its removal, it was still unclear at what point in time the change in elevation became unsafe." *Id.* at *11.  Furthermore, the court noted, there was also "evidence in the record that the condition of the sidewalk might not have been caused by the adjacent tree's roots." *Id.*  This Court, therefore, concluded that Ms. Mitchell's argument under the passage of time theory was not supported by the evidence. *Id.*

_____

[9] This Court noted that Ms. Mitchell's counsel conceded at oral argument that the removal of immunity under Tenn. Code Ann. § 29-20-205 had not been raised on appeal.  Thus, only the removal of immunity under Tenn. Code Ann. § 29-20-203 was at issue.

- 8 -

This Court also concluded that Ms. Mitchell failed to prove constructive notice under the common occurrence theory. *Id.* at \*12. We find it unnecessary to summarize this portion of *Mitchell I* because the common occurrence theory[10] is not argued in the present appeal. In sum, the trial court determined that "the evidence before this Court preponderates in favor of the trial court's finding that the City had no constructive notice of the unsafe condition of the sidewalk." *Id.* at \*13.

After agreeing with the trial court's ultimate decision, this Court went on the decide the evidentiary issues on appeal: whether the trial court erred in excluding (1) the testimony of the expert, David Johnson, with respect to the City's maintenance and inspection of its sidewalks, and (2) an exemplar photograph depicting the condition of another section of the sidewalk near the church for the purpose of demonstrating the condition of the section where Ms. Mitchell fell before it was remediated by the City. *Id.* at \*4. With respect to the exemplar photograph, the court found no abuse of discretion. With respect to the other evidentiary issue, the Court found that, under *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 16 (Tenn. 1997),[11] the trial court misapplied the law and, therefore, abused its discretion in excluding Mr. Johnson's testimony on maintenance and inspection.[12]

---

[10] Under the common occurrence theory, "a dangerous condition occurs so often that the owner of the premises should know of the condition and take all reasonable action to remedy the situation." *Benn. v. Pub. Bldg. Auth. of Knox Cnty.*, No. E2009-01083-COA-R3-CV, 2010 WL 2593932, at \*4 (Tenn. Ct. App. June 28, 2010).

[11] In *Hawks*, the plaintiffs lost their home due to the defective condition of city fire hydrants and sued under Tenn. Code Ann. § 29-20-204, governing the removal of a governmental entity's immunity for injuries caused by "the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by such governmental entity." *Hawks*, 960 S.W.2d at 12. In denying constructive notice, the City of Westmoreland relied upon Tenn. Code Ann. § 29-20-205(4), which provides for the following exception to the removal of a governmental entity's immunity for its employees' negligent acts or omissions: if the injury arises from "[a] failure to make an inspection, or by reasons of making an inadequate or negligent inspection of any property." *Id.* at 16. Our Supreme Court disagreed, stating that Tenn. Code Ann. § 29-20-205(4) provides for immunity when a governmental entity fails to discharge a "duty to inspect property not owned by the City." *Id.* The Court made clear that § 205(4) is not applicable to a court's determination under Tenn. Code Ann. § 204 regarding whether a city failed to discharge its duty to inspect, which governs immunity with respect to dangerous conditions on "publicly owned and controlled property." *Id.* In *Mitchell I*, this Court held: "Since Ms. Mitchell is seeking recovery from the City which owns and controls the sidewalk in question pursuant to section 29-20-203, section 29-20-205(4) does not provide immunity from suit arising from 'any injury caused by a defective, unsafe, or dangerous condition' of that sidewalk if either actual or constructive notice is 'alleged and proved.'" *Mitchell I*, 2022 WL 4841912, at \*17 (quoting Tenn. Code Ann. § 29-20-203).

[12] This Court also cautioned against the practice used by Ms. Mitchell in filing her offer of proof after the notice of appeal. *Mitchell I*, 2022 WL 4841912, at \*16.

- 9 -

Because of this evidentiary error, this Court vacated and remanded for the trial court to consider the testimony of Mr. Johnson "concerning the maintenance and inspection of the City's sidewalks." *Id.* at *18. This Court instructed the trial court as follows:

> Given that we have already concluded that Ms. Mitchell failed to prove constructive notice with the evidence before us, we remand with the limited instruction to consider the testimony of the human factors engineer as it pertains to the City's maintenance and inspection of the sidewalks.

*Id.*

### *Remand*

On remand, the trial court heard further testimony from Mr. Johnson. Mr. Johnson testified that, to ensure the safety of its sidewalks, a city had to "inspect and maintain those sidewalks." He was then asked to describe and explain "what a sidewalk inspection program would look like starting with the sidewalk inventory and going through the actual periodic inspections." Mr. Johnson agreed that a city's inspection program should include records on the sidewalks' construction and their maintenance and inspection history. He then went on to describe the City's actual sidewalk inspections. Mr. Johnson testified that he had reviewed the City's sidewalk and maintenance inspection program, which he described as a "complaint-based program," meaning that the City relied on the public to make a complaint before the City would inspect or repair a defect. Further, according to Mr. Johnson, the City did not have an inventory of its sidewalks or any records of maintenance or inspections. In Mr. Johnson's opinion, in order to be safe and efficacious, "the program would need to be proactive, meaning that you identify and make repairs before someone gets hurt." Further, Mr. Johnson testified, such a proactive program would require regular periodic inspections.

Mr. Johnson opined that "[m]ost municipalities the size of Franklin would do an annual inspection" and that, with approximately 300 miles of sidewalk, the City could feasibly perform annual inspections. Plaintiff's counsel then asked Mr. Johnson whether, if the City had an inspection program in place, the City would have found the sidewalk defect that caused Ms. Mitchell's fall. Mr. Johnson opined:

> Yes. So the condition existed for at least six or seven years, according to testimony from Mr. Johnson, according to Google street views, which shows the – appears the same condition beginning from October 2011, same condition is also present just prior to Ms. Mitchell's fall in June of 2018. You can look at the street views each year all the way up until Ms. Mitchell's fall, and that condition appears to be the same.

- 10 -

Mr. Johnson testified that the Google Street View photographs were the types of documents a safety engineer would rely upon in determining how long a condition had been present. He stated that the Google photographs were consistent with known events, including the cutting down of the tree in 2016. Furthermore, Mr. Johnson testified that sidewalk upheaval by tree roots occurs very slowly over time. While acknowledging that it was not possible to identify a precise point in time when the displacement exceeded one-fourth of an inch, he stated:

> No, but just looking at the appearance, the displacement from 2011 until 2018, it appears consistent. Meaning that the tree probably grew little, if any, because it was you know they cut it down in 2016, it was dying several years before that, years before that with the limbs dropping on cars and so forth.

Asked about other possible causes, Mr. Johnson opined that an impact would not cause "consistent uplift of the sidewalk across the width of the expansion joint." He explained that frost and thaw cycles were not a real issue as far south as Tennessee and that, if they did occur, would cause changes in "very small increments."

On cross-examination, defense counsel emphasized the trial court's previous rulings regarding the reliability of the photographs and witness testimony in determining how long the sidewalk defect had existed. Mr. Johnson admitted that, if the length of time that the condition had existed was not established, one could not know whether an inspection program would have remedied the condition.

In an order entered on April 20, 2023, the trial court found that Mr. Johnson's "opinions were not based upon reliable evidence" and that he "failed to establish that the City's inspection program placed the City on constructive notice of the defect on the sidewalk where Ms. Mitchell fell." The trial court determined that, as to the only issue remaining to be determined on remand, Ms. Mitchell failed "to carry her burden of proof with respect to the 'failure to inspect' theory of constructive notice." The court, therefore, entered judgment in favor of the City. Ms. Mitchell appeals from the trial court's final order.

*Issues on appeal*

Ms. Mitchell frames the overall issue on appeal to be whether the evidence preponderates against the trial court's finding that the City of Franklin had no constructive notice of the unsafe condition of the sidewalk. She further identifies sub-issues, which we restate as follows: (1) whether the trial court erred in finding that Ms. Mitchell failed to prove that the vertical offset of the sidewalk had existed for a sufficient length of time that constructive notice should be presumed; (2) whether the trial court erred in finding that Ms. Mitchell failed to prove that an adjacent tree's roots caused the uplifting of the sidewalk; and (3) whether the trial court erred in failing to find that the City of Franklin's

failure to inspect the sidewalk placed the City on constructive notice of the defect in the sidewalk where Ms. Mitchell fell.

The City's first issue is whether the arguments made by Ms. Mitchell are pretermitted by the law of the case doctrine. If we find that Ms. Mitchell's arguments are not pretermitted, the City asserts (1) that the evidence confirms the trial court's conclusion that the City did not have constructive notice of the condition of the sidewalk in question and (2) that, on limited remand, the trial court correctly determined that immunity for the City was not removed.

ANALYSIS

We must first address the City's position that Ms. Mitchell's arguments on appeal are pretermitted by the law of the case doctrine. Ms. Mitchell did not address this issue in her original brief or file a reply brief; thus, we do not have the benefit of her arguments on the issue.

Our Supreme Court has described the doctrine of the law of the case as follows:

> An appellate court's final decision in a case establishes the "law of the case" when a case is remanded for further proceedings. This "law of the case" is binding on the trial court during the remanded proceedings and is also binding on the appellate courts should a second appeal be taken after the trial court enters a judgment in response to the remand order. *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998). While the doctrine applies only to issues that were actually decided by the court, explicitly or implicitly, it does not apply to dicta. *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d at 306; *Ladd ex rel. Ladd v. Honda Motor Co.*, 939 S.W.2d 83, 90 (Tenn. Ct. App. 1996).

> The "law of the case" doctrine is neither a constitutional mandate nor an inflexible limit on the adjudicatory power of the courts. Instead, it is "a longstanding discretionary rule of judicial practice," *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d at 306; *Orlando Residence, Ltd. v. Nashville Lodging Co.*, 213 S.W.3d 855, 861 (Tenn. Ct. App. 2006), reflecting the commonsense recognition that issues previously litigated and decided by a court of competent jurisdiction need not be revisited. *In re Estate of Boote*, 265 S.W.3d 402, 413 (Tenn. Ct. App. 2007); *Ladd ex rel. Ladd v. Honda Motor Co.*, 939 S.W.2d at 90. Adhering to the "law of the case" doctrine promotes finality and efficiency in litigation, ensures consistent results in the same proceeding, and assures that lower courts follow the decision of higher courts. *State v. Jefferson*, 31 S.W.3d 558,

- 12 -

561 (Tenn. 2000); *Harrison v. Laursen*, 128 S.W.3d 204, 208 (Tenn. Ct. App. 2003).

As salutary as the "law of the case" doctrine may be, it does not erect an absolute bar to the renewed consideration of earlier-decided issues. The doctrine does not necessarily apply: (1) when the evidence offered at a trial or hearing following the remand is substantially different from the evidence in the earlier proceeding; (2) when the prior decision was clearly erroneous and would result in manifest injustice if allowed to stand; or (3) when the prior decision is contrary to a change in the controlling law which has occurred between the first and second appeal. *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d at 306; *In re Estate of Boote*, 265 S.W.3d at 413.

*Gray's Disposal Co., Inc. v. Metro. Govt. of Nashville*, 318 S.W.3d 342, 348 (Tenn. 2010).

To determine the applicability of the law of the case doctrine here, we must examine what was decided by the court in *Mitchell I*. After an extended discussion of the evidence regarding constructive notice, this Court stated: "We conclude here that the evidence before this Court preponderates in favor of the trial court's finding that the City had no constructive notice of the unsafe condition of the sidewalk." *Mitchell I*, 2022 WL 4841912, at *13. The court then ruled on the evidentiary issues on appeal and concluded that the trial court had erred in excluding the testimony of the expert witness, Mr. Johnson, regarding "the maintenance and inspection of the City's sidewalks." *Id.* at *18. The court went on to explain:

It is difficult to ascertain what the substance of the actual testimony would have been in this case. The record contains only an affidavit by the human factors engineer and no proffered cross-examination. As such, we cannot discern whether the excluded testimony of the human factors engineer would have provided proof of constructive notice.

Therefore, we vacate and remand for the trial court to consider the testimony of the human factors engineer concerning the maintenance and inspection of the City's sidewalks. Given that we have already concluded that Ms. Mitchell failed to prove constructive notice with the evidence before us, we remand with the limited instruction to consider the testimony of the human factors engineer as it pertains to the City's maintenance and inspection of its sidewalks.

*Id.*

On remand, as set forth above, Mr. Johnson testified regarding the City's existing practices of maintenance and inspection of sidewalks and opined that safety standards required the City to conduct periodic inspections, which he recommended should be done annually. Mr. Johnson opined that the unevenness of the sidewalk where Ms. Mitchell fell exceeded acceptable levels for "at least six or seven years" based upon witness testimony and Google photographs as well as his position that the unevenness was caused by tree roots. Therefore, he opined, the City would have caught and corrected the sidewalk defect at issue if it had in place a reasonable periodic inspection schedule. Ms. Mitchell offered no new evidence on the issue of how long the condition of the sidewalk (with a height differential exceeding one-fourth of an inch) had existed.

We must conclude that Ms. Mitchell's arguments on appeal regarding constructive notice are pretermitted by the law of the case from *Mitchell I*. Only one of the three exceptions to the doctrine arguably applies here: "when the evidence offered at a trial or hearing following the remand is substantially different from the evidence in the earlier proceeding." *Gray's Disposal*, 318 S.W.3d at 348. On remand in this case, all of the evidence relied upon by the expert witness to support his conclusion regarding the length of time the defect had existed was before the trial court at the original hearing and rejected by the trial court as unreliable or insufficient. The evidence offered on remand regarding the length of time the sidewalk defect had existed was not "substantially different" from in the first proceeding. As Mr. Johnson acknowledged on cross-examination, a reasonable inspection policy has no effect without proof of the length of time the defect existed. In *Mitchell I*, this Court affirmed the trial court's decision on constructive notice based upon the evidence before it, and that decision pretermits the issues presented by Ms. Mitchell in this second appeal.

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Ruth Mitchell, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE

- 14 -