IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 3, 2001 Session

## THOMAS W. HARRISON, ET AL. v. EARL LAURSEN, ET AL.

Appeal from the Chancery Court for Giles County
No. 7581    Robert L. Jones, Judge

No. M2000-00482-COA-R3-CV - Filed August 5, 2003

This is the fourth appeal regarding the sale of a 128-acre farm in Giles County. The sellers originally sued the buyers in the Chancery Court for Giles County in 1991, alleging that the buyers had breached the contract by defaulting on their payments. The buyers counterclaimed, asserting that the sellers had breached the contract by failing to provide city water to the property and that the sellers had committed fraud and violated the Tennessee Consumer Protection Act. On the first appeal, this court affirmed the trial court's judgment rescinding the sale but remanded the case with directions to address the question of damages. The case was tried five more times and was appealed twice. In the sixth trial, a jury awarded the buyers $32,444.42. On this the fourth appeal, the buyers take issue with the trial court's exclusion of evidence regarding the sellers' alleged fraud, the jury's calculation of the increased value of the property, and the trial court's refusal to award them prejudgment interest. We affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Earl Laursen and Dolorita Laursen, Pulaski, Tennessee, Pro Se.

M. Andrew Hoover, Pulaski, Tennessee, for the appellees, Thomas W. Harrison, Terry Harrison, and Brenda Kennamore.

### OPINION

### I.

In January 1988, Earl and Dolorita Laursen approached Thomas Harrison about buying a 128-acre farm in Giles County known as the "McCaskell place." Although Mr. Harrison told them initially that the farm was not for sale, the Laursens eventually persuaded him to sell the farm for

$1,000 per acre.[1]  On January 26, 1988, the parties executed a contract in which the Laursens agreed to pay the $128,000 purchase price by paying $5,500 down, assuming an $86,797.67 mortgage, and repaying the remaining $35,702.32 at eight percent interest.

The Laursens' negotiations with the Harrisons led them to believe that the property was going to be served by city water.[2]  In August 1990, after they discovered that there were no plans to extend city water to the property, the Laursens stopped paying for the property because they believed that the Harrisons had made false representations to them.  The Harrisons declared the contract breached and re-occupied the property in November 1990.

In January 1991, the Harrisons filed suit against the Laursens in the Chancery Court for Giles County seeking rescission, damages, and forfeiture of the payments the Laursens had already made. The Laursens responded with a counterclaim for rescission or for specific performance.  Following a bench trial in April 1991, the trial court rescinded the contract, awarded the Harrisons $10,775.27 in lost interest, and ordered the forfeiture of the mortgage payments the Laursens had already made to the Harrisons.  On appeal, this court affirmed the judgment of rescission but vacated the damage awards because they were inconsistent with the remedy of rescission.  We remanded the case for a trial on the issue of damages with the following directions:

> the Laursens are entitled to recover the amounts paid on the purchase price plus the taxes.  The Harrisons are entitled to be compensated for the use of the land while it was in the Laursens' possession.  If the changes made on the property by the Laursens increased its value, they are entitled to the increase; if the changes caused the property to depreciate, the Harrisons are entitled to recover the amount of the depreciation.

*Harrison v. Laursen*, No. 01A01-9204-CV-00177, 1992 WL 301309, at * 4 (Tenn. Ct. App. Oct. 23, 1992) (No Tenn. R. App. P. 11 application filed).

The second trial of this case occurred in May 1993, this time before a jury.  The jury returned a verdict for the Harrisons in the amount of $10,558.46; however, the trial court suggested an additur that, if accepted, would have resulted in a $13,000.00 judgment for the Harrisons.  Rather than accepting the suggested additur, the Laursens requested a new trial.  The third trial was held in May 1994, and on this occasion, the jury returned a verdict for the Laursens in the amount of $11,934.46. Both parties filed post-trial motions challenging the verdict, and the trial court granted the Harrisons a new trial on the ground that the evidence did not support the jury's verdict.

The fourth trial took place in December 1994.  The trial court declined to empanel a jury on this occasion and awarded the Harrisons $22,000.00.  The Laursens appealed to this court for the

---

[1] The Laursens claim they were never told that Terry Harrison and Brenda Harrison Kennamore, Mr. Harrison's children, also had ownership interests in the farm.  However, their ownership is not disputed and both children are parties to this appeal along with the estate of Mr. Harrison, who died at an unspecified time after the fourth trial in this case.

[2] By this time, the Laursens had apparently decided to develop the property.

second time, and we reversed the judgment and again ordered a new trial, this time because the trial court had disregarded the Laursens' request for a jury. *Harrison v. Laursen*, No. 01A01-9505-CH-00192, 1996 WL 221862, at * 7 (Tenn. Ct. App. May 3, 1996) (No Tenn. R. App. P. 11 application filed).

The parties tried this case for the fifth time in October 1996. On this occasion, a jury returned a verdict for the Harrisons in the amount of $32,901.54. Both parties appealed, and this case returned to this court for the third time. We were required to reverse the judgment again because the trial court had erred by declining to set aside the judgment against Ms. Laursen and by refusing to permit Mr. Laursen, who was representing himself, from testifying. *Harrison v. Laursen*, No. 01A01-9705-CH-00238, 1998 WL 70635, at * 4-6 (Tenn. Ct. App. Feb. 20, 1998) (No Tenn. R. App. P. 11 application filed).

The trial judge who had presided over the five earlier trials was replaced prior to the sixth trial which was held in January 2000. This time, a jury returned a $32,444.42 judgment for the Laursens.[3] The trial court denied the Laursens' request for prejudgment interest. The Laursens have perfected an appeal, and this case returns to this court yet again.[4]

## II.
### THE EXCLUSION OF THE EVIDENCE OF ALLEGED FRAUD

We turn first to the Laursens' claim that the trial court erred by excluding evidence regarding their allegations that the Harrisons had made material misrepresentations during the negotiations regarding the extension of city water to the property. This argument reflects the Laursens' failure to understand the legal significance of our original 1992 opinion which limited, as a matter of law, the issues to be tried on remand. We have determined that the trial court did not err by excluding this evidence.

In their initial counterclaim, the Laursens alleged that Mr. Harrison committed fraud and violated Tennessee's Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.* (2001), by making material misrepresentations that induced them to sign the purchase contract. They claim Mr. Harrison told them city water would soon be available on the property. They also claim that he showed them how close the water lines were to the property and pointed out a fence he had removed to make way for the final extension of the water lines onto the property. When asked why the water lines were not mentioned in the purchase contract, Mr. Harrison allegedly told the Laursens that language providing for "128 acres and all improvements located on Haywood Road" included the water line extension. The Laursens also claim they were defrauded by Mr. Harrison's alleged failure

---

[3]The jury awarded the Laursens $32,277.75 [the total of their payments and property taxes] + $1,300.00 [the appreciation in the property due to the Laursens' improvements] - $1,133.33 [the rental value of the property while the Laursens possessed it].

[4]In addition to the three earlier appeals in this case, the Laursens also appealed another judgment awarding their former attorney prejudgment interest on an unpaid attorney's fee. *Harrison v. Laursen*, No. M2001-00073-COA-R3-CV, 2002 WL 83610, at *1 (Tenn. Ct. App. Jan. 22, 2002) (No Tenn. R. App. P. 11 application filed).

to inform them that his children, Terry Harrison and Brenda Harrison Kennamore, also had ownership interests in the property.[5]

Notwithstanding the clear instructions in our 1992 opinion regarding the scope of the issues to be tried on remand, the parties participated in four more trials over the next seven years in which our opinion appears to have been largely ignored. Prior to the sixth trial, the Harrisons filed a motion in limine seeking to bar the Laursens from presenting evidence regarding their fraud, misrepresentation, and violation of the Tennessee Consumer Act claims. The trial court granted this motion, and we will review this decision using the "abuse of discretion" standard. *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 258 (Tenn. 1997); *Heath v. Memphis Radiological Prof'l Corp.*, 79 S.W.3d 550, 558-59 (Tenn. Ct. App. 2001).

The ruling of an appellate court becomes the law of the case that is binding on the parties and the trial court on remand. *State ex rel. Sizemore v. United Physicians Ins. Risk Retention Group*, 56 S.W.3d 557, 566 (Tenn. Ct. App. 2001). The law of the case doctrine generally prohibits reconsideration of issues actually decided or necessarily decided by implication in a prior appeal in the same case. *State v. Jefferson*, 31 S.W.3d 558, 560-61 (Tenn. 2000); *Memphis Pub. Co. v. Tennessee Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998); *Ladd v. Honda Motor Co., Ltd.*, 939 S.W.2d 83, 90 (Tenn. Ct. App. 1996); 18B Charles A. Wright et al., *Federal Practice and Procedure* § 4478, at 649-60 (2d ed. 2002). The rule promotes finality and efficiency of litigation, ensures consistent results in the same litigation, and assures that lower courts follow appellate decisions. *State v. Jefferson*, 31 S.W.3d at 561; *Memphis Pub. Co. v. Tennessee Petroleum Underground Storage Tank Bd.*, 975 S.W.2d at 306; 1B James W. Moore, *Moore's Federal Practice* ¶ 0.404 [1] (2d ed. 1995). Thus, except in certain limited situations, trial courts cannot re-visit issues decided by a prior appeal. *State v. Jefferson*, 31 S.W.3d at 561; *Memphis Pub. Co. v. Tennessee Petroleum Underground Storage Tank Bd.*, 975 S.W.2d at 306; 18B Wright, *Federal Practice & Procedure* § 4478, at 670-72.

The viability of the Laursens' damage claims for misrepresentation, fraud, and violation of the Tennessee Consumer Protection Act ended with our 1992 opinion in which we affirmed the trial court's decision to grant both parties' requests for rescission and to return them to the position they were in before they entered into the January 1988 contract. Our remand instructions did not authorize the parties to pursue any other substantive remedies that the trial court had not granted and, in fact, left only five factual questions for a jury to decide: (1) the payments the Laursens made toward the purchase of the property, (2) the amount of property taxes the Laursens paid for the property, (3) the fair rental value of the property while the Laursens possessed it, (4) the increase in value of the property, if any, due to improvements made by the Laursens, and (5) the depreciation in the value of the property, if any, caused by the Laursens' use of the property. The trial court's order granting the Harrisons' motion in limine removed legally extraneous issues from the proceeding and finally forced the parties to direct their attention to the issues at hand. Rather than abusing its discretion with regard to the scope of admissible evidence, the trial court was simply keeping the scope of the evidence within permissible bounds.

---

[5]Along with these allegations, the Laursens intimate a breach of fiduciary duty claim by portraying their claims alongside the fact that Mr. Harrison was a licensed real estate agent at the time of their land deal. However, they have wisely chosen not to press this claim to any of the courts that have heard this case.

# III.
## THE JURY'S ASSESSMENT FOR THE APPRECIATION IN THE VALUE OF THE PROPERTY

The Laursens also assert that the jury's decision that their improvements had increased the value of the property by $1,300.00 was erroneous. They insist that their improvements had increased the value of the property by $19,000.00 and that the jury should have awarded them that amount. After reviewing the record in accordance with Tenn. R. App. P. 13(d), we have no basis for concluding that there is no evidence to support the jury's verdict.

The Laursens' $19,000.00 claim rests solely on the testimony of their appraiser, Mike Wilson, who testified that he had appraised the property in 1985 at $70,000.00 and in 1993 at $89,000.00. However, Mr. Wilson also testified that his 1993 appraisal was based, at least in part, on the fact that the rundown house that had been on the property had been destroyed by fire in 1991. In Mr. Wilson's opinion, the value of the property was enhanced by the destruction of the house. In addition, Ms. Laursen testified that the house was in essentially the same condition when the Harrisons reclaimed it in 1990 as it had been in 1988 when the Laursens took possession of it.[6] The testimony of both Ms. Laursen and Mr. Wilson provides material evidence that supports the jury's decision that the property had appreciated $1,300.00 while the Laursens possessed it.

# IV.
## THE LAURSENS' REQUEST FOR PRE-JUDGMENT INTEREST

The Laursens' major complaint on this appeal involves the trial court's refusal to award them prejudgment interest. They contend that equity demands an award of prejudgment interest because the Harrisons have had beneficial use of their purchase money since January 1988 while they have had neither the benefit of those funds nor the expected benefit from their planned development of the property. We have concluded that the trial court did not err when it denied the Laursens' request for prejudgment interest.

Tennessee's courts have always had the common-law power to award prejudgment interest. However, early in the nineteenth century, the legislature began codifying that power. *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d 78, 81 (Tenn. Ct. App. 2000). The modern statute provides, in part:

> Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum . . ..

Tenn. Code Ann. § 47-14-123 (2001).

---

[6]Mr. Laursen claimed that he had spent $6,500.00 to improve the property. However, these "improvements" consisted of a wheat crop that Mr. Laursen planted and harvested in 1989. Thus, this expenditure did nothing to permanently improve the value of the property, and the jury was justified in disregarding it.

The common-law power to award prejudgment interest has consistently been viewed as an equitable matter entrusted to the judge's discretion. Accordingly, Tenn. Code Ann. § 47-14-123 has been construed to preserve the discretionary character of these decisions. *Alexander v. Inman*, 974 S.W.2d 689, 697-98 (Tenn. 1998); *Spencer v. A-1 Crane Serv., Inc.*, 880 S.W.2d 938, 944 (Tenn.1994); *Brandt v. BIB Enter., Ltd.*, 986 S.W.2d 586, 595 (Tenn. Ct. App. 1998). Accordingly, appellate courts will not disturb a trial court's decision regarding prejudgment interest "unless the record reveals a manifest and palpable abuse of discretion." *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998); *York v. Vulcan Materials Co.*, 63 S.W.3d 384, 390 (Tenn. Ct. App. 2001).

The primary purpose in awarding prejudgment interest is to assure that the plaintiff is fully compensated for the lost use of funds to which he or she was entitled. *Francisco v. United States*, 267 F.3d 303, 310 (3d Cir. 2001)*; Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d at 83. However, allowing trial courts to award prejudgment interest also serves a secondary purpose of hastening settlement and the conduct of litigation. *Val-U Constr. Co. v. Rosebud Sioux Tribe*, 146 F.3d 573, 582 (8th Cir. 1998). "Delay damages" provide an incentive for parties to avoid delaying trial by allowing the losing party to limit its damages. *Francisco v. United States*, 267 F.3d at 311; *Batchelder v. Tweedie*, 294 A.2d 443, 444 (Me. 1972). This secondary purpose is further served by considering the parties' respective fault for delays, *Francisco v. United States*, 267 F.3d at 311, as the party who ultimately loses will pay more interest if it is found to have caused delays in the trial while the prevailing party may lose its right to interest for delaying the proceedings. *Batchelder v. Tweedie*, 294 A.2d at 444.

Our courts have recognized that the trial courts can consider the unusual duration of litigation as a factor in reducing prejudgment interest. *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d at 83; *Varner Constr. Co. v. Marrs*, No. W2000-01029-COA-R3-CV, 2002 WL 818234, at *14 (Tenn. Ct. App. Apr. 18, 2002) (No Tenn. R. App. P. 11 application filed). Although we have never allowed the complete denial of prejudgment interest because of the plaintiff's behavior during litigation, we have allowed a denial of interest when the plaintiff's business methods led to the lawsuit. *Craftbuilt Mfg. Co v. United Window Co.,* No. E1999-01529-COA-R3-CV, 2000 WL 281659, at * 3 (Tenn. Ct. App. Mar. 16, 2000) (No Tenn. R. App. P. 11 application filed). In addition, other courts have recognized that the plaintiff's responsibility for delaying the proceedings may justify the denial of prejudgment interest. *E.g.*, *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656-57, 103 S. Ct. 2058, 2063 (1983); *Val-U Constr. Co. v. Rosebud Sioux Tribe*, 146 F.3d at 582; *Locricchio v. Legal Servs. Corp.*, 833 F.2d 1352, 1360 (9th Cir. 1987); *Stroh Container Co. v. Delphi Indus. Inc.*, 783 F.2d 743, 752 (8th Cir. 1986). We follow these courts in extending the equitable considerations regarding prejudgment interest.

Although some authority exists to support the Laursens' argument that they should not be denied interest where the trial court and the defendant caused the delays,[7] *Foley v. City of Lowell*, 948 F.2d 10, 17-18 (1st Cir. 1991), they are not blameless in this case. Trial courts can deny prejudgment interest when both parties are responsible for delays. *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1546 (Fed. Cir. 1991) (denying interest where both parties agreed to a stay).

---

[7]The trial court faulted the Harrisons for delaying the proceedings by making demands that exceeded the bounds of credibility and the judicial system for letting this case get out of hand by approving rescission in a case that instead should have been decided against the Laursens in the first instance.

The trial court concluded that the Laursens delayed this case by refusing to stay focused on the issues and repeatedly addressing extraneous matters. Accordingly, the Laursens' partial responsibility for delaying the conclusion of this litigation justified the trial court's decision to deny prejudgment interest.

## V.

We affirm the judgment and remand the case to the trial court for whatever further proceedings consistent with this opinion may be required. We tax the costs of this appeal to Earl and Dolorita Laursen and their surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE