IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 1, 2019

## STATE EX REL. DEPARTMENT OF TRANSPORTATION v. WILLIAM H. THOMAS, JR.

**Appeal from the Chancery Court for Shelby County**
**No. CH-07-0454-1   Walter L. Evans, Judge**

———————————————————

**No. W2018-01541-COA-R10-CV**

———————————————————

The trial court reinstated its previous ruling that had been reversed on appeal because a "change in the controlling law" occurred that justified departure from the law of the case doctrine. Because we conclude that no change in controlling law occurred to allow the trial court to avoid application of the law of the case doctrine, we reverse the order of the trial court and remand for further proceedings before a different trial judge.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which RICHARD H. DINKINS and JOHN W. MCCLARTY, JJ., joined.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; George G. Boyte, Jr., Deputy Attorney General, for the appellant, State of Tennessee *ex rel.* Department of Transportation.

William H. Thomas, Jr., Memphis, Tennessee, Pro se.[1]

## OPINION

### I. FACTS AND PROCEDURAL HISTORY

This is the third appeal in this case. For purposes of continuity, we take many of the initial facts from our first opinion, ***State ex rel. Com'r of Dep't of Transp. v. Thomas***, 336 S.W.3d 588 (Tenn. Ct. App. 2010) (hereinafter "***Thomas I***"). The genesis

———————————————

[1] Mr. Thomas is a licensed Tennessee attorney.

of this dispute is an action by Plaintiff/Appellant State of Tennessee on behalf of the Commissioner of the Department of Transportation ("the State" or "TDOT") against Defendant/Appellee William H. Thomas, Jr., regarding Mr. Thomas's alleged construction and operation of several unpermitted billboards in violation of the Billboard Regulation and Control Act of 1972 ("the Billboard Act"), codified at Tennessee Code Annotated section 54-21-101 *et seq*. *Id.* at 591–93. With regard to some of the unpermitted billboards, administrative hearings occurred in which Mr. Thomas was ultimately ordered to remove the unpermitted billboards. *Id.* at 592.

### *A. Thomas I*

Mr. Thomas allegedly refused to comply with the orders to remove various unpermitted billboards following administrative hearings. Mr. Thomas also began construction on a new unpermitted billboard at the Crossroads Ford site despite the fact that his administrative appeal of the denial of his permit for that location was pending.[2] *Id.* In response, the State filed an action in Shelby County Chancery Court for injunctive relief and a declaratory judgment. *Id.* at 593. The complaint alleged that construction of the Crossroads Ford billboard and use of it for outdoor advertisements would violate the Billboard Act and constitute a public nuisance. The State asked that the billboard be demolished at Mr. Thomas's expense and that any revenue from advertising obtained through the unpermitted billboards be placed in a constructive trust. *Id.*

Mr. Thomas filed an answer to the complaint admitting ongoing unpermitted construction of a billboard at the Crossroads Ford site. *Id.* Mr. Thomas denied, however, that the State was entitled to relief due to the ongoing administrative appeal concerning the billboard currently under construction. Mr. Thomas also filed a counterclaim against the State, asserting allegations of vindictive and discriminatory enforcement of the Act, unclean hands, and violations of due process and equal protection. *Id.* at 593–94.

A hearing was eventually held in which the State argued that the trial court lacked subject matter jurisdiction over Mr. Thomas's counterclaim because the relief sought could only be pursued in Davidson County under the Uniform Administrative Procedures Act. *Id.* at 594. Mr. Thomas countered that the trial court could issue injunctive relief against the State and that venue was proper in Shelby County based on a statute involving matters of real property. Following the hearing, the State filed a formal motion to dismiss Mr. Thomas's counterclaim for lack of subject matter jurisdiction. *Id.* at 595. The trial court eventually denied the State's motion to dismiss and granted relief in favor Mr. Thomas on virtually all of his claims. *Id.*

---

[2] In order to construct this unpermitted billboard, Mr. Thomas "excavated a roadway over a box culvert on the State-owned right-of-way at the Interstate 40/Interstate 240 interchange, without permission to do so." *Id.* at 593.

A multitude of proceedings occurred thereafter in both the trial court and the pending administrative actions, culminating in a February 2008 final order. In this order, the trial court confirmed its prior ruling with regard to subject matter jurisdiction over Mr. Thomas's claims and ultimately ruled in favor of Thomas on a variety of claims, including directing the State to issue permits to Mr. Thomas for four billboards and awarding Mr. Thomas $10,000.00 in attorney's fees. *Id.* at 598–99. Following some post-judgment proceedings, the State appealed to this Court. *Id.* at 600.

In **Thomas I**, we defined the determinative issue to be whether the trial court had subject matter jurisdiction to adjudicate the claims for relief raised in Mr. Thomas's counterclaim, as well as the requests for relief that were predicated on the counterclaim. *Id.* at 601. Mr. Thomas argued that venue was proper in Shelby County because Tennessee Code Annotated section 20-4-107 provides that "[n]otwithstanding any other law or rule of procedure to the contrary, any action the subject matter of which involves real property in which this state, or any agency of this state, is a party, may be properly instituted in any county in which the property is located." *Id.* at 601–02. The State argued, however, that the claim was governed by the Uniform Administrative Procedures Act ("UAPA"), which provides for exclusive subject matter jurisdiction in the Davidson County Chancery Court. *Id.* at 601 (citing Tenn. Code Ann. § 4-5-322(a) (2005) ("Proceedings for review are instituted by filing a petition for review in the chancery court of Davidson County, unless another court is specified by statute.")).[3]

We agreed with the State's argument, concluding that the gravamen of Mr. Thomas's claim was an action against a commissioner and an appeal from a contested case before an agency. *Id.* at 602–03. Exclusive jurisdiction over these claims, however, was vested in the Davidson County Chancery Court. *Id.* (citing Tenn. Code Ann. § 4-5-322(a) (2005); **Southwest Williamson County Comm. Ass'n v. Saltsman**, 66 S.W.3d 872 (Tenn. Ct. App. 2001) (citing Tenn. Code Ann. §4-4-1-4(a)) (holding that a suit against a commissioner in his or her official capacity must be filed in the commissioner's official county of residence, *i.e.,* Davidson County)).[4] We dismissed Mr. Thomas's argument that

---

[3] This subsection has been amended since the decision in **Thomas I** and currently provides that

> venue for appeals of contested case hearings shall be in the chancery court nearest to the place of residence of the person contesting the agency action or alternatively, at the person's discretion, in the chancery court nearest to the place where the cause of action arose, or in the chancery court of Davidson County.

Tenn. Code Ann. § 4-5-322(b)(1)(A)(ii). The current version of the statute became effective in July 2018. *See* 2018 Tenn. Laws Pub. Ch. 1021 (S.B. 2603).

[4] Importantly, although we noted that the Billboard Act had been amended to include an express jurisdictional provision in 2009, we did not apply that provision in **Thomas I**, as the case had been initiated prior to the effective June 23, 2009 date of the statute. *See id.* at 608 n.24 (citing Tenn. Code Ann. § 54-21-105(d) (Supp. 2009) ("Notwithstanding any other law to the contrary, in any case or

section 20-4-107 allowed him to file his claim in Shelby County, as we concluded that this statute was merely a venue statute that did not alter the exclusive grant of subject matter jurisdiction to the Davidson County Chancery Court over UAPA matters and that, in any event, Mr. Thomas's claims were only "tangential[ly]" related to real property. Instead, the gravamen of Mr. Thomas's counterclaim was that he had been discriminated against during the administrative proceedings. After considering and rejecting a number of Mr. Thomas's other arguments, we ultimately concluded that "the defenses, claims, and requests for relief asserted by [Mr.] Thomas in the trial court below may only be heard in Davidson County." *Id.* at 608. The court noted, however, that Mr. Thomas was not left without a remedy as he was free to seek redress in Davidson County Chancery Court under the provisions of the UAPA. As a result, the trial court's judgment in favor of Mr. Thomas on these claims was "void and of no effect." Finally, we dismissed Mr. Thomas's counterclaim for lack of jurisdiction and remanded for further proceedings. Mr. Thomas thereafter appealed to the Tennessee Supreme Court; the court denied Mr. Thomas's application for permission to appeal on November 18, 2010. Mandate issued on December 9, 2010.

## B.  *Thomas II*

The dispute, however, was far from finished. While the appeal in *Thomas I* was pending, Mr. Thomas completed construction on the Crossroads Ford billboard. *State ex rel. Dep't of Transportation v. Thomas*, No. W2013-02082-COA-R3-CV, 2014 WL 6992126, at *5 (Tenn. Ct. App. Dec. 11, 2014) (hereinafter, "*Thomas II*"). Despite never obtaining a permit for this billboard, he began operating it in 2009. *Id.* The State thereafter sought to require Mr. Thomas to remove the billboard. Mr. Thomas responded that he would remove paid advertisements from the board and only display his "First Amendment Rights of Freedom and Speech" on the billboard "from time to time." The State thereafter sought restitution of costs paid in the first action. In March 2011, Mr. Thomas obtained an ex parte temporary restraining order ("TRO") enjoining the State from taking action to enforce the Billboard Act. The State responded in opposition, noting that the trial court's action conflicted with the mandate of *Thomas I*, that it did not receive proper notice of the request, and that the trial court's order was not properly supported. The trial court entered an order requiring that Mr. Thomas repay the full amount of attorney's fees awarded in *Thomas I*, but only half of the discretionary costs. Mr. Thomas refused to comply with the trial court's order, resulting in the State obtaining

controversy arising from any regulatory or enforcement action taken by the commissioner or department under § 54-21-105 or this chapter, wherein any cause of action, claim, counterclaim, cross-claim or any other claim or request for remedy whatsoever is asserted against the state, the commissioner, the department or any official or employee thereof, jurisdiction shall be vested exclusively in the chancery court for Davidson County; provided, that any contested case hearing with respect to the issuance, denial, nonrenewal or voiding of any outdoor advertising permit shall remain under the jurisdiction of the commissioner in accordance with the Uniform Administrative Procedures Act, compiled in title 4, chapter 5.")).

an abstracts of judgment for execution of the order of restitution. The trial court thereafter entered an order finding that the abstracts of judgment was entered in error and directed the State to release all judgment liens. *Id.*

On February 24, 2012, the State filed a motion for summary judgment, seeking a final declaratory judgment that Mr. Thomas operated the Crossroads Ford billboard in contravention of the Billboard Act. *Id.* The trial court denied the motion based on disputes of fact. A bench trial occurred in February 4, 2013, and an order was entered on August 2, 2013, enjoining Mr. Thomas from using the Crossroads Ford billboard for commercial advertising unless and until he obtained a permit for the site. *Id.* at *6. The trial court ruled, however, that the Crossroads Billboard could be used for non-commercial messages, as this use was exempt from regulation and "subject to review of this court." The trial court finally ruled that the State could not remove the offending billboard. After obtaining a final order, the State again appealed.

Once again, we reversed the decision of the trial court. *Id.* at *7–*8. Applying the law of the case doctrine, discussed in detail *infra*, we held that the trial court erred in refusing to require Mr. Thomas to repay the entirety of the discretionary costs ordered in **Thomas I**. *Id.* at *7. We also noted our holding in **Thomas I** that the Billboard Act "flatly prohibits the erection of outdoor advertising without a State permit . . . . Unless [Mr.] Thomas fits within one of the exceptions named in the Act, if he does not have a State billboard permit, he is not allowed to erect a billboard. Period." *Id.* (citing **Thomas I**, 336 S.W.3d at 608–09). Based on this holding, we concluded that the trial court

> deviated from the law of the case in considering Mr. Thomas'[s] somewhat novel First Amendment defense to the use of the disputed billboard. The trial court did not have jurisdiction to adjudicate this defense under our holding in **Thomas I**. Regardless of what message is displayed on the Crossroads Ford site billboard, the fact remains that, in the absence of the required permit and tag, Mr. Thomas is "not allowed to erect a billboard. Period."

*Id.* (quoting **Thomas I**, 336 S.W.3d at 608–09). As such, we ruled that when it became clear that Mr. Thomas had erected the Crossroads Ford billboard without a permit, "the trial court should have granted TDOT's original petition for injunctive relief, and should have declared the subject billboard a public nuisance pursuant to Tennessee Code Annotated Section 54-21-104." We therefore reversed the decision of the trial court and entered very specific instructions on remand.[5] We also cautioned the trial court to

---

[5] Specifically, we ordered that the trial court was empowered to take only the following actions:

1. The trial court shall enter judgment in favor of the State, and against Mr. Thomas, in the full amount $26,135.00, and allow the State to collect payment upon the

"'strictly comply with the appellate court's mandate'" absent extraordinary circumstances. *Id.* at *8 (citing ***Rudd v. Rudd***, No. W2011-01007-COA-R3-CV, 2011 WL 6777030, at *7 (Tenn. Ct. App. Dec. 22, 2011)).

## C. The Federal Action

Alas, Mr. Thomas was not willing to give up this fight. Accordingly, while ***Thomas II*** was pending, in December 2013, Mr. Thomas filed an action in the United States District Court for the Western District of Tennessee ("district court" or "federal district court") against multiple State officials in their official capacities. *See **Thomas v. Schroer***, 248 F. Supp. 3d 868, 874 (W.D. Tenn. 2017), *reconsideration denied*, No. 13-CV-02987-JPM-CGC, 2017 WL 6489144 (W.D. Tenn. Sept. 20, 2017) (hereinafter, "Federal District Court Ruling"). The complaint and amended complaint alleged that Mr. Thomas's Crossroads Ford sign was entitled to First Amendment protection as non-commercial speech. The district court eventually granted a motion to dismiss and for summary judgment, leaving only a single claim remaining: "whether the removal of [Mr. Thomas's] billboards under the Billboard Act violated his First Amendment rights." The district court applying the recent United States Supreme Court precedent in ***Reed v. Town of Gilbert, Ariz.***, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015), held that the Billboard Act was subject to strict scrutiny because it is a content-based regulation that implicates Mr. Thomas's non-commercial speech. Under this standard, the district court went on to hold

---

injunction bond for the temporary restraining order that was wrongfully issued on March 14, 2011. The trial court shall further allow execution to issue against Mr. Thomas for these amounts plus any interest accruing on these amounts.

2. In light of the fact that Mr. Thomas has not obtained a permit for the Crossroads Ford site billboard, the trial court shall grant the State's original petition in full. Specifically, the court shall declare the Crossroads Ford site billboard a public nuisance under Tennessee Code Annotated Section 54-21-104(a)(2), and shall further enjoin Mr. Thomas to completely remove the offensive billboard at his own expense within 90 days of the entry of judgment in this appeal. Should Mr. Thomas fail to remove the billboard within the 90 day time period, the State may remove the billboard under its statutory authority. If the State removes the billboard structure, it shall be entitled to, and the trial court shall render, judgment against Mr. Thomas in the full amount of the State's expenses incurred in the removal of the billboard, including, but not limited to, penalties, fees, and interest thereon. The trial court shall allow execution to issue if necessary for the judgment on removal costs.

3. The Crossroads Ford site billboard is unlawful and must be removed. In light of our holding in ***Thomas I*** that the trial court does not have subject-matter jurisdiction over Mr. Thomas'[s] defenses, the trial court shall not hear any further claims, counterclaims, purported defenses, or arguments from Mr. Thomas supporting the continuing existence or use of the Crossroads Ford site billboard. If Mr. Thomas has any further arguments, he may address them solely to the Chancery Court of Davidson County under Tennessee Code Annotated Section 54[-]21-105(d).

*Id.* at *7–8.

that the Billboard Act did not survive strict scrutiny because the State's interests were not compelling, or even assuming compelling interests, the law was not narrowly tailored toward those interests. *Id.* at 887–94. Specifically, the district court ruled that the law was both likely overinclusive and underinclusive. *Id.* at 888–89. As such, the district court declared the Act unconstitutional and declined to sever the purported constitutional parts of the statute with those deemed unconstitutional. *Id.* at 895 n.12 ("The Court notes that if it were clear from the face of the statute that the Tennessee legislature would have enacted the Billboard Act with the unconstitutional on-premises/off-premises distinction omitted, the Court could sever the unconstitutional provisions while the Billboard Act's constitutional provisions stay in effect. . . . The Court, however, is unpersuaded that the Billboard Act, as written, is severable in this manner.") (internal citations omitted).

In denying a request for reconsideration, however, the district court clarified that while the Billboard Act was not severable, Mr. Thomas's claims only concerned the constitutionality of the Act "as applied" to Mr. Thomas's billboards. ***Thomas v. Schroer***, No. 13-CV-02987-JPM-CGC, 2017 WL 6489144, at \*5 & \*8 (W.D. Tenn. Sept. 20, 2017). The district court also entered a permanent injunction preventing the State from enforcing the Billboard Act as to the Crossroads Ford billboard; the district court declined, however, to issue a permanent injunction as to "any of [Mr.] Thomas's other signs . . . , as this injunctive relief is either waived or untimely, and even if not waived or untimely such an injunction constitutes impermissible relief under the as-applied challenge." *Id.* at \*10. The State appealed the district court's decision to the United States Court of Appeals for the Sixth Circuit. Oral argument occurred in January 2019.

In the fall of 2017, Mr. Thomas provided the trial court with notice of the Federal District Court's ruling. Then, on December 19, 2017, Mr. Thomas filed a motion for judgment consistent with that ruling. The State responded in opposition, but on March 20, 2018, the trial court granted in part Mr. Thomas's motion. Therein, the trial court ruled that the Federal District Court Ruling, based on the United States Supreme Court's opinion in ***Reed***, constituted a change in the controlling law that "invalidated" the Billboard Act's jurisdictional provision, that the Federal District Court Ruling had retroactive effect on the case-at-bar, and that the trial court therefore could exercise jurisdiction over Mr. Thomas's counterclaims. As such, the trial court reinstated its February 2008 order granting judgment in favor of Mr. Thomas and ordered that Mr. Thomas could present a request for attorney's fees. The trial court thereafter entertained additional motions for relief filed by Mr. Thomas seeking various injunctions, sanctions, and contempt findings.

The State thereafter filed a motion for an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. The record does not contain an order in which the trial court ruled on this relief. On August 23, 2018, the State sought an extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure.

This Court granted the State's application by order of October 22, 2018; therein, we ruled that the trial court's order granting relief in favor of Mr. Thomas and a later order granting an injunction in favor of Mr. Thomas were stayed pending further orders of this Court.

## II. DISCUSSION

In granting this extraordinary appeal, we limited review to the following issue: "Whether a 2017 ruling from a federal district court finding Tennessee's Billboard Regulation and Control Act of 1972 unconstitutional is a 'change in the controlling law' that renders this Court's prior rulings no longer the 'law of the case' in this case." We answer this question in the negative.

As an initial matter, a brief explanation of the law of the case doctrine is helpful:

An appellate court's final decision in a case establishes the "law of the case" when a case is remanded for further proceedings. This "law of the case" is binding on the trial court during the remanded proceedings and is also binding on the appellate courts should a second appeal be taken after the trial court enters a judgment in response to the remand order. *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn.1998). While the doctrine applies only to issues that were actually decided by the court, explicitly or implicitly, it does not apply to dicta. *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d at 306; *Ladd ex rel. Ladd v. Honda Motor Co.*, 939 S.W.2d 83, 90 (Tenn. Ct. App. 1996).

The "law of the case" doctrine is neither a constitutional mandate nor an inflexible limit on the adjudicatory power of the courts. Instead, it is "a longstanding discretionary rule of judicial practice," *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d at 306; *Orlando Residence, Ltd. v. Nashville Lodging Co.*, 213 S.W.3d 855, 861 (Tenn. Ct. App. 2006), reflecting the commonsense recognition that issues previously litigated and decided by a court of competent jurisdiction need not be revisited. *In re Estate of Boote*, 265 S.W.3d 402, 413 (Tenn. Ct. App. 2007); *Ladd ex rel. Ladd v. Honda Motor Co.*, 939 S.W.2d at 90. Adhering to the "law of the case" doctrine promotes finality and efficiency in litigation, ensures consistent results in the same proceeding, and assures that lower courts follow the decision of higher courts. *State v. Jefferson*, 31 S.W.3d 558, 561 (Tenn. 2000); *Harrison v. Laursen*, 128 S.W.3d 204, 208 (Tenn. Ct. App. 2003).

As salutary as the "law of the case" doctrine may be, it does not erect an absolute bar to the renewed consideration of earlier-decided issues. The doctrine does not necessarily apply: (1) when the evidence offered at a

- 8 -

trial or hearing following the remand is substantially different from the evidence in the earlier proceeding; (2) when the prior decision was clearly erroneous and would result in manifest injustice if allowed to stand; or (3) when the prior decision is contrary to a change in the controlling law which has occurred between the first and second appeal. ***Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.***, 975 S.W.2d at 306; ***In re Estate of Boote***, 265 S.W.3d at 413.

***Gray's Disposal Co. v. Metro. Gov't of Nashville***, 318 S.W.3d 342, 348 (Tenn. 2010).

As previously discussed, the sole question in this case is whether the 2017 Federal District Court Ruling constitutes a change in controlling law for purposes of the law of the case doctrine. It does not. Although our decisions are controlled by the United States Supreme Court when that Court has held that a particular course of conduct violates the federal constitution, our decisions are not controlled by the opinions of the lower courts of the federal system. ***Denver Area Meat Cutters & Employers Pension Plan v. Clayton***, 209 S.W.3d 584, 590–91 (Tenn. Ct. App. 2006) (citing ***Bowman v. Henard***, 547 S.W.2d 527, 530 (Tenn. 1977)); *see also* ***Leggett v. Duke Energy Corp.***, 308 S.W.3d 843, 871 (Tenn. 2010) (holding that "because lower federal courts exercise no appellate jurisdiction over state tribunals, decisions of lower federal courts are not conclusive on state courts"); ***Thompson v. State***, 958 S.W.2d 156, 174 (Tenn. Crim. App. 1997) ("The United States Supreme Court is the only federal court Tennessee courts are bound to follow."). In cases where we have found a change in controlling law sufficient to depart from the law of the case doctrine, the change in law occurred through controlling Tennessee law or controlling United States Supreme Court precedent. *See, e.g.,* ***Gray's Disposal Co. v. Metro. Gov't of Nashville***, 318 S.W.3d 342, 350 (Tenn. 2010) (involving a change to federal constitutional precedent as set forth by the United States Supreme Court). Thus, the 2016 decision of the district court to invalidate to Act as to certain billboards does not constitute a "change in controlling law" because the cited authority is simply not controlling on Tennessee courts.

Although this long-standing rule was raised in the State's brief to this Court, Mr. Thomas does little to counter it. Instead, Mr. Thomas argues that this Court must follow the Federal District Court Ruling under the Full Faith and Credit Clause, citing ***Mullins v. State***, 294 S.W.3d 529, 535 (Tenn. 2009), and ***Whitsey v. Williamson Cty. Bank***, 700 S.W.2d 562, 564 (Tenn. Ct. App. 1985). These cases, however, do not concern the change in controlling law exception to the law of the case doctrine, but whether a final judgment entered in federal court should be given preclusive effect in state court under the doctrines of collateral estoppel and res judicata, respectively. *See* ***Mullins***, 294 S.W.3d at 535; ***Whitsey***, 700 S.W.2d at 564. The doctrine of law of the case, however, is distinct from the doctrines cited by Mr. Thomas. *See* ***State v. Scarbrough***, No. E2003-02850-CCA-R9-CD, 2004 WL 2280423, at *4–5 (Tenn. Crim. App. Oct. 11, 2004), *aff'd*, 181 S.W.3d 650 (Tenn. 2005) (quoting Brett T. Parks, *McDonald's Corp. v. Hawkins and the "Law of the Case" Doctrine in Arkansas*, 50 Ark. L.Rev. 127, 131 (1997)) ("The law

of the case and collateral estoppel are different in that collateral estoppel prevents the relitigation of issues in successive suits between the same parties; the law of the case prevents relitigation of the same issues within successive stages of the same suit. Res judicata differs from the law of the case in that it settles the rights of the parties once the judgment is final. The law of the case does not settle rights; it only settles the law to be applied in determining the rights of the parties."); 17 Couch on Ins. § 239:12 ("Distinct from the concepts of res judicata, collateral estoppel, and stare decisis, is the principle of the law of the case, which essentially applies to later proceedings in the same case.") (footnote omitted). As such, these cases provide no support for his assertion that the Federal District Court Ruling constitutes a change in controlling law for purposes of the law of the case doctrine.[6]

Mr. Thomas also cites a number of other federal cases in support of his theory. Generally, however, the cases were decided well before the 2010 initial decision of this Court regarding lack of subject matter jurisdiction. *See* ***Harper v. Virginia Dept. of Taxation***, 509 U.S. 86 (1993); ***James B. Beam Distilling Co. v. Georgia***, 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991);[7] ***Felder v. Casey***, 487 U.S.131, 138 (1988); ***U.S. v. Finazzo***, 288 F.2d 175, 177 (6th Cir. 1961); ***Poling v. Goins***, 713 S.W.2d 305 (Tenn. 1986). These decisions therefore cannot constitute a change in the law that occurred "between the first and second appeal," as to qualify for the exception to the law of the case doctrine. ***Gray's Disposal Co.***, 318 S.W.3d at 348. Moreover, nothing in these cases alter the well-established principle in Tennessee that decisions by federal district courts are not "controlling" on Tennessee courts.

We note that one United States Supreme Court case that was decided after both the 2010 initial decision and the second appeal in 2014 is cited in Mr. Thomas's brief: ***Reed v. Town of Gilbert, Ariz.***, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015). In ***Reed***, the United States Supreme Court ruled that a town's zoning ordinance banning certain signage was

---

[6] Moreover, essential elements of both collateral estoppel and res judicata are final judgments. *See* ***Mullins***, 294 S.W.3d at 535 (stating that an essential element of collateral estoppel is "that the judgment in the earlier proceeding has become final"); ***Jackson v. Smith***, 387 S.W.3d 486, 491 (Tenn. 2012) (holding that an essential element of res judicata is "that the underlying judgment was final and on the merits"). There is no dispute that the judgment of the federal court is not final under Tennessee law, as it is still on appeal to the United States Court of Appeals for the Sixth Circuit. *See* ***Creech***, 281 S.W.3d at 377 (noting Tennessee law that "judgment is not final and res judicata where an appeal is pending").

[7] Mr. Thomas strongly argues that "***Beam*** controls this case" in that it requires retrospective application of law to litigants in direct appeal. ***Beam*** is not helpful in this case, however, because it concerns the Georgia Supreme Court's refusal to apply retroactively a federal precedent set forth by the United States Supreme Court in ***Bacchus Imports, Ltd. v. Dias***, 468 U.S. 263, 104 S. Ct. 3049, 82 L. Ed. 2d 200 (1984), in a single direct appeal. Indeed, the ***Bacchus*** decision was filed by the United States Supreme Court prior to the initiation of the Georgia case. The case therefore did not involve either the law of the case doctrine or an attempt to persuade a state court to find a lower federal court ruling to be "controlling" for purposes of that doctrine. It therefore cannot be read to require that Tennessee courts depart from the law of the case doctrine based on a ruling from a federal district court.

subject to strict scrutiny and, analyzed under that standard, violated the right to free speech. *Id.* at 2231–2233. The district court relied on *Reed* to hold that the Act was unconstitutional as applied to Mr. Thomas's Crossroads Ford billboard.

Mr. Thomas's reliance on *Reed*, however, is misplaced for a number of reasons. First, as previously discussed, the central holding of *Thomas I* was that the UAPA's jurisdictional provisions required that the case be filed in Davidson County Chancery Court. *See Thomas I*, 336 S.W.3d at 607–08. From our review, the Billboard Act's jurisdictional provision simply played no role in the resolution of *Thomas I*. *Id.* at 608 n.24. As such, even were the Billboard Act's jurisdictional provision invalidated based on constitutional principles articulated in *Reed*, or even in the Federal District Court Ruling, it is not clear from what effect, if any, such a decision would have to the result in *Thomas I*.

In addition, the trial court's order does not state that *Reed* is the change in controlling law that justifies departure from the law of the case doctrine; the trial court makes clear that the "Federal District Court's order of March 21, 2017 . . . constitutes a 'change in the controlling law'" that excepts this case from the law of the case doctrine. It is therefore the Federal District Court Ruling that the trial court concluded was a change in the controlling law, not simply the *Reed* decision.[8] The issue accepted by this Court illustrates that the trial court's ruling was indeed premised on the decision of the district court, rather than on the *Reed* decision. Here, as previously discussed, this Court limited review to only whether the "2017 ruling from a federal district court finding Tennessee's Billboard Regulation and Control Act of 1972 unconstitutional is a 'change in the controlling law[.]'" *See generally Culbertson v. Culbertson*, 455 S.W.3d 107, 127 (Tenn. Ct. App. 2014) (quoting *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 914 (Tenn. Ct. App. 2000) ("For extraordinary appeals, the issues are limited to those specified in this court's order granting the extraordinary appeal.")). Given the trial court's order and the limited review applicable to this appeal, we simply cannot address whether the *Reed* decision constitutes a change in controlling law sufficient to justify departure from the law of the case doctrine; such issue is simply not before this Court.

---

[8] Although *Reed* is mentioned as the predicate for the district court's grant of Mr. Thomas's as-applied challenge to the Billboard Act, the trial court's order, considered as a whole, reveals that it was not this case that supported departure from the law of the case doctrine. If, indeed, the trial court had concluded that *Reed* was a change in controlling law, that would not, *ispo facto*, require reversal of the previous decision dismissing this case based on lack of subject jurisdiction under the UAPA. Rather, analysis would be required to determine whether the Billboard Act ran afoul of the rule set forth in *Reed*, as well as whether the invalidation of the Billboard Act altered the result in *Thomas I*, which was not dismissed based on the Billboard Act's jurisdictional provision. *See Thomas I*, 336 S.W.3d at 607–08. The trial court's order on appeal contains no such analysis, but assumes the unconstitutionality of the Billboard Act based upon the district court's ruling applying *Reed* to the Tennessee statute. As such, it is clear, both implicitly and explicitly, that the change in the law that the trial court considered was the Federal District Court Ruling, not the decision in *Reed*.

In sum, the 2017 Federal District Court Ruling does not represent a change in controlling law for purposes of the law of the case doctrine. The trial court therefore erred in reinstating its February 2008 order in light of the two previous appeals in this matter that ruled that the trial court lacked jurisdiction to enter that order. The judgment of the trial court is reversed. The mandates of **Thomas I** and **Thomas II** are reinstated. Given our resolution of this appeal, we conclude "that reassignment to a different trial judge is advisable to preserve the appearance of justice." **Rudd v. Rudd**, No. W2011-01007-COA-R3CV, 2011 WL 6777030, at *7 (Tenn. Ct. App. Dec. 22, 2011); *see also* **Kocher v. Bearden**, No. W2017-02519-COA-R3-CV, 2018 WL 6423030, at *13 (Tenn. Ct. App. Dec. 5, 2018) (reassigning the matter to a different judge in a second appeal concerning sealing of records).

## III. CONCLUSION

The judgment of the Shelby County Chancery Court is reversed. The stay previously granted by this Court is hereby dissolved. This matter is remanded to the trial court for further proceedings consistent with this opinion. On remand, the presiding judge of the 30th Judicial District is directed to assign this case to a different trial judge. Costs of this appeal are taxed to Appellee William H. Thomas, Jr., for which execution may issue if necessary.

 

_____

J. STEVEN STAFFORD, JUDGE